## State of Connecticut *v.* Jose Santiago
## (14152)

Peters, C. J., Borden, Berdon, Norcott and Santaniello, Js.

*(One justice dissenting)*

Argued September 30—decision released December 29, 1992

*Lauren Weisfeld,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Lawrence Daly,* assistant state's attorney, for the appellee (state).

NORCOTT, J. The defendant, Jose Santiago,[1] appeals from the judgment of conviction, after a jury trial, of the crime of murder in violation of General Statutes § 53a-54a (a).[2] The trial court sentenced the defendant to a term of imprisonment of forty-five years. On appeal to this court,[3] the defendant claims that the trial court: (1) violated his constitutional right to confrontation by improperly limiting his cross-examination of one of the state's witnesses; (2) abused its discretion by denying him access to the police personnel file of one of the state's witnesses for impeachment purposes; and (3) abused its discretion by allowing the state to present evidence to establish that a stolen weapon had been used in the murder of the victim. We agree with the defendant on the first issue and, on that basis, we reverse the judgment of the trial court and direct that the case be remanded for a new trial.

[1] The defendant's correct name is Jorge Rodriguez Santiago. Jose Santiago is a mistaken record of the correct name, but will be used in this opinion to avoid confusion with other documents related to this appeal.

[2] General Statutes § 53a-54a (a) provides in pertinent part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . ."

[3] The defendant appeals pursuant to General Statutes § 51-199 (b) (3) which provides: "The following matters shall be taken directly to the supreme court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

The evidence at trial established the following. On August 14, 1986, at approximately 10:30 p.m., the Hartford police found the victim, Jose Vasquez, shot in the chest and the leg outside of 700 Broad Street. The victim was taken by ambulance to Hartford Hospital where he was later pronounced dead.

There was a history of ill feeling between the victim and the defendant. Sometime prior to the date of the shooting, a "track player" and a bracelet had been stolen from the apartment of Alba Silva, the victim's girlfriend. The victim and his brother, Luis Vasquez, with whom he lived, suspected the defendant and Sammy Figueroa of the theft.

On the evening of August 14, 1986, a confrontation ensued in front of the victim's apartment at 700 Broad Street among the victim, the victim's brother, Figueroa, the defendant and Francisco Rodriguez, the defendant's brother. When the victim threw a punch at Figueroa, the confrontation escalated from an argument to a fistfight. At this point, the state and the defendant offered conflicting versions of what happened next.

The state presented evidence tending to show that after the victim punched Figueroa, the defendant pulled out a gun and pointed it in the victim's direction. The victim ran down an alley near the back of his apartment building. The defendant fired a shot in the victim's direction and exclaimed in Spanish, "I am going to kill you, bastard." The defendant then chased the victim toward the rear of the building and fired two additional shots, one of which caused the victim's death. Next, the defendant returned to the front of the building, fired two more shots in the direction of the third floor apartment where the victim and his brother lived, and threatened that the victim's brother would be next. The defendant ran away from the building and stopped to unload and reload the handgun.

The defendant presented evidence tending to show that it had been Figueroa who produced the gun and that Figueroa, the victim, and Luis Vasquez, who was also armed, ran down the alley leading to the back of the building. During this time the defendant remained near a fence at the entrance of the alleyway. Several shots were heard. Moments later, the victim's brother ran from the alley and into the apartment building. He was followed by Figueroa, who came out holding a gun, handed it to the defendant to safeguard, and then disappeared.

The defendant was later apprehended at 162 Oak Street, with a .38 snub-nosed Smith and Wesson handgun in the waistband of his pants and wearing a blue and white jersey with the number nine on the back. Subsequent ballistics reports linked the gun found in the defendant's waistband to shell casings from the crime scene and from a garbage can located near where the defendant had been observed unloading the handgun.

I

The defendant first claims that his constitutionally guaranteed right to confrontation[4] was violated when the trial court prevented him from eliciting, during cross-examination, evidence of possible motive or bias on the part of William Acevedo, a witness for the state. Specifically, the defendant argues that the trial court

---

[4] "The sixth amendment to the United States constitution, as applied to the states in *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965), provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' " *State* v. *Oehman,* 212 Conn. 325, 329 n.3, 562 A.2d 493 (1989).

Although the defendant also claims a violation of his right to confront witnesses under article first, § 8, of the state constitution, he has failed to present an independent analysis for this claim. Consequently, we limit our analysis to the relevant federal constitutional claim. See *State* v. *Joly,* 219 Conn. 234, 258 n.16, 593 A.2d 96 (1991); *State* v. *Mercer,* 208 Conn. 52, 67 n.9, 544 A.2d 611 (1988).

improperly prevented the defendant from questioning Acevedo about his present relationship with the Hartford police department. We agree.

The following facts are relevant to this claim. At trial, Acevedo was a key witness for the state. During his direct examination, Acevedo testified to the following. On the evening of August 14, 1986, at approximately 10:15 to 10:30 p.m., Acevedo was on the porch of 700 Broad Street visiting friends. On the sidewalk in front of the building, he observed a group of individuals, including the defendant and the victim, engaged in an argument. The defendant was wearing a blue football jersey with the number nine on the back.

When the altercation evolved from an argument to a shoving match, Acevedo left the porch and went to his car. He then observed the defendant push Figueroa aside, take a handgun from him, and aim it at the victim. He also observed the victim run toward the back of the alley, and saw the defendant fire the handgun at the victim, shout a threat, and chase the victim into the alley. He immediately heard two gunshots come from behind the building. Acevedo saw the defendant emerge from the alley and run to the front of the apartment building. There, the defendant threatened in Spanish, "I'm going to get you all," and fired two shots at the third floor apartment. The defendant then ran away from the building, stopping only to unload and reload the gun.

Acevedo later observed the defendant on the east side of Grand and Broad Streets, and informed a Hartford police detective that he had seen the defendant heading toward Oak Street. Acevedo was certain that it had been the defendant who fired the .38 caliber handgun at the victim earlier that night.

During cross-examination, the defendant inquired into Acevedo's employment history, specifically his

association with the Hartford police department. Acevedo testified that, beginning in 1981, for approximately one and one-half years, he had been employed by the Hartford police department as a patrolman. He also testified that he knew two of the detectives who responded to the shooting. The defendant then questioned Acevedo as to what relationship, if any, he presently had with the Hartford police department. The state objected and the trial court sustained this objection.[5] On appeal, the defendant argues that the trial court's ruling completely precluded him from exploring whether any relationship currently existed between Acevedo and the Hartford police department from which the jury could reasonably infer that Acevedo's testimony was biased.[6]

---

[5] During cross-examination the following colloquy ensued:

"[Defense Counsel]: What is your relationship to the Hartford police department at the present time?

"[The State]: Objection. It's irrelevant.

"The Court: Sustained.

"[Defense Counsel]: Exception, Your Honor.

"The Court: You have it.

"[Defense Counsel]: Do you have any relationship with the Hartford police department?

"[The State]: Objection.

"The Court: Sustained.

"[Defense Counsel]: It goes to bias, Your Honor.

"The Court: Sustained, Counselor.

"[Defense Counsel]: May I have an exception?

"The Court: You have it.

"[Defense Counsel]: May I have one moment, Your Honor?

"The Court: Mm-hm.

"[Defense Counsel]: Since the time of the incident you have described here, how many times have you talked to the police?

"[The Witness]: None."

[6] The state argues that the defendant's first claim does not warrant review because: (1) it was unpreserved; and (2) it fails the test under the *Evans/Golding* exceptional circumstances doctrine. See *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973); *State* v. *Golding,* 213 Conn. 233, 239–41, 567 A.2d 823 (1989). We disagree. While the defendant made no offer of proof to support the evidence to which the state objected, the defendant did take proper exceptions to the court's rulings and clearly stated that he was

" 'The primary interest secured by confrontation is the right to cross-examination; *Douglas* v. *Alabama,* 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965); and an important function of cross-examination is the exposure of a witness' motivation in testifying. *Greene* v. *McElroy,* 360 U.S. 474, 496, 79 S. Ct. 1400, 3 L. Ed. 2d 1377 (1959). Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted.' *State* v. *Lubesky,* 195 Conn. 475, 481–82, 488 A.2d 1239 (1985). In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury 'facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.' *Davis* v. *Alaska,* 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v. *Lubesky,* supra, 482." *State* v. *Arline,* 223 Conn. 52, 60, 612 A.2d 755 (1992).

"In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." *State* v. *Roma,* 199 Conn. 110, 116, 505 A.2d 717 (1986). Although it is axiomatic that the scope of cross-examination generally rests within the discretion of the trial court, "[t]he denial of all meaningful cross-examination into a legitimate area of inquiry fails to comport with constitutional standards under the confrontation clause." Id.; see also *State* v. *Oeh-*

---

attempting to elicit evidence of bias. We are unaware of any of our cases, and the state has not presented us with any, requiring an offer of proof in order to preserve a claim of infringement on the right of cross-examination. We conclude, therefore, that the defendant properly preserved the confrontation issue for review.

*man,* 212 Conn. 325, 330–31, 562 A.2d 493 (1989); *State* v. *James,* 211 Conn. 555, 573, 560 A.2d 426 (1989).

Our review of the record in this case leads us to conclude that, by precluding any examination of Acevedo's present relationship to the Hartford police department, the trial court improperly prohibited inquiry into a legitimate area of cross-examination. " 'Partiality, or any acts, relationships or motives reasonably likely to produce it, may be proved to impeach credibility.' " *State* v. *Oehman,* supra, 331. Although the defendant elicited the facts that the witness briefly had been a police officer in 1981, and that he knew two of the detectives who had investigated the shooting, the defendant was cut off from any further pursuit of the witness' relationship with the Hartford police department. It is always relevant to the issue of bias that a witness may have a relationship to the prosecuting authorities in a criminal case. To preclude exploration of such a relationship unduly restricts the defendant's right to cross-examination. While the witness' present relationship with the Hartford police department might not have been particularly illuminating of motive or bias, the weight to be accorded such evidence was a matter for the jury. Id., 331–32.

We conclude, therefore, that the trial court failed to allow the defendant a sufficient cross-examination of Acevedo to satisfy the requirements of the constitution by preventing the defendant from exploring Acevedo's current relationship with the Hartford police department. The trial court's improper limitation of the defendant's cross-examination of Acevedo would, however, require a new trial only if it was not harmless beyond a reasonable doubt. *Chapman* v. *California,* 386 U.S. 18, 23–24, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967).

The correct inquiry for identifying harmless constitutional error is to ask whether, "assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Delaware* v. *Van Arsdall,* 475 U.S. 673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); *State* v. *Milner,* 206 Conn. 512, 529, 539 A.2d 80 (1988). Whether such error is harmless in a particular case depends upon a number of factors, such as " 'the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.' " *State* v. *Milner,* supra, 529; *State* v. *Oehman,* supra, 332. Most importantly, we must examine the impact of the evidence on the trier of fact and the result of the trial. *State* v. *Ortiz,* 198 Conn. 220, 225, 502 A.2d 400 (1985). "Any improper evidence that may have a tendency to . . . influence the judgment, of the jury, cannot be considered as harmless." (Internal quotation marks omitted.) *State* v. *Sierra,* 213 Conn. 422, 437, 568 A.2d 448 (1990).

Against these standards we are persuaded, from a review of the entire record, that the trial court's limitation of the defendant's cross-examination of Acevedo was not harmless beyond a reasonable doubt. Acevedo was a key witness for the prosecution. His testimony provided the only evidence from a witness who was not involved in the altercation that directly implicated the defendant.[7] Furthermore, the remainder of the state's

---

[7] Luis Vasquez also offered an account of the shooting that was substantially similar to that of Acevedo. Both Acevedo and Vasquez testified to the confrontation on the street, both stated that the handgun was in the defendant's possession as he fired shots in the direction of the fleeing vic-

case-in-chief consisted of evidence of the fact that a .38
Smith and Wesson handgun was found on the defend-
ant when he was apprehended and that shell casings
and a bullet recovered from the crime scene had been
fired from that same gun. This physical evidence is no
more corroborative of Acevedo's testimony than it is
of the defendant's explanation that he was merely hold-
ing the gun for Figueroa.

The importance of Acevedo's testimony is also
reflected by the fact that the jury, during deliberations,
asked that the full testimony of only two witnesses be
reread: that of Acevedo; and that of Isabella Rivera,
a witness for the defense. Such a request indicates that
the jury regarded Acevedo's testimony as especially sig-
nificant. We are not satisfied beyond a reasonable doubt
that without Acevedo's testimony the jury would have
returned a verdict of guilty. We conclude, therefore,
that the trial court's improper limitation on the defend-
ant's cross-examination of Acevedo requires reversal
and we remand the case to the trial court for a new
trial.

---

tim, and both heard two shots fired after seeing the defendant pursue the
victim down the alley. Vasquez testified that after the defendant first fired
the gun, he ran inside the apartment building and up to his third floor apart-
ment. From that position Vasquez heard two shots come from behind the
building and from the back porch he could see the victim laying on his back.

Several of the defense witnesses, who had no specific involvement with
the participants in the confrontation, testified that Vasquez played a greater
role in the altercation in that he was armed and that he, Figueroa and the
victim ran down the alleyway before the shots were heard. Vasquez had
testified for the state that neither he nor his brother had been armed at
the time of the altercation. The defendant testified that it was after sev-
eral shots had been fired that Vasquez came from the alley and ran into
his apartment building, whereas Vasquez claimed he ran upstairs immedi-
ately after the defendant pulled out the gun and fired down the alley toward
the victim. In light of the conflicting testimony regarding Vasquez' involve-
ment in the shooting, we cannot say that Acevedo's testimony is merely
cumulative of that of Vasquez.

## II

We will consider the defendant's two remaining evidentiary claims insofar as they may arise again at a new trial. The defendant claims that the trial court abused its discretion by denying the defendant access to Acevedo's police personnel file, thus limiting his right effectively to cross-examine and impeach the state's witness.[8] The defendant also claims that the trial court abused its discretion in permitting the state to present evidence establishing that a stolen weapon had been used in the murder of the victim. We disagree with both of these claims.

### A

#### FAILURE TO DISCLOSE POLICE PERSONNEL FILE

After the state had rested its case-in-chief, the defendant subpoenaed Acevedo's personnel records from the Hartford police department. The city of Hartford moved to quash the subpoena duces tecum outright or after an in camera inspection.[9] The trial court conducted an in camera inspection and, on June 30, 1987, ruled that there was nothing in the file that related to the issue of Acevedo's truth or veracity.[10] Accordingly, the court sealed the personnel file from

[8] The defendant also appears to argue that the trial court's decision regarding the personnel file implicated his constitutional right to confrontation. We find nothing in the record that indicates that the defendant ever raised this claim in the trial court. Therefore, we consider the issue as a purely evidentiary decision, and will disturb it only if the trial court's decision constitutes an abuse of discretion. See *State* v. *D'Ambrosio,* 212 Conn. 50, 58–59, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990).

[9] The motion to quash was premised on the fact that under the Freedom of Information Act, General Statutes § 1-7 et seq., personnel files are exempt from disclosure as public records. General Statutes § 1-19 (b) (2).

[10] The trial court concluded: "[T]he court has gone through the personnel file of former officer Acevedo for purposes of determining whether or not there is anything in that file that may have something to do with his

use by either counsel.[11] The defendant argues that access to the information in the personnel file was relevant to show Acevedo's lack of competence and overall unreliability as a witness, and that the trial court wrongfully precluded him from discovery of this impeachment material.

Generally, the trial court has discretion to determine the relevancy of evidence and to limit the scope of cross-examination. *State* v. *Vitale,* 197 Conn. 396, 401, 497 A.2d 956 (1985). This includes limiting discovery where material is sought for impeachment purposes. *State* v. *Januszewski,* 182 Conn. 142, 171, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). In *State* v. *Januszewski,* supra, we recognized the need to balance the witness' interest in maintaining the confidentiality of his personnel file against the right of a criminal defendant fully to cross-examine all witnesses against him. We stated that "[b]ecause discovery of matters contained in a police officer's personnel file involves careful discrimination between material that relates to the issues involved and that which is irrelevant to those issues, the judicial authority should exercise its discretion in determining what matters shall be disclosed. An in camera inspection of the documents involved, therefore, will under most circumstances be necessary." Id., 172–73.

reputation for truth and veracity. The court has made a perusal of the complete file and I find that there is nothing in the file that would indicate anything of that nature at all. If anything, the file would indicate that officer Acevedo was let go for—perhaps for lack of a better word—incompetence more than anything else. . . . Again, I would repeat for the record I find nothing in this report that would in any way be of assistance to counsel in this case."

[11] The trial court denied the city's motion to quash after an in camera inspection of the file. The trial court indicated that the file would be marked as an exhibit for purposes of appeal, but then stated that it was to be sealed definitely. We take this ruling to mean that although the motion to quash was denied with respect to having it expunged from the court file at all, it was in effect granted with respect to the parties' counsel's access to the file.

The trial court must make available to the defendant only that material that it concludes "is clearly material and relevant to the issue involved." Id., 173; *State v. Perry*, 195 Conn. 505, 523, 488 A.2d 1256 (1985). "The linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material especially probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality . . . ." (Citation omitted; internal quotation marks omitted.) *State v. Storlazzi*, 191 Conn. 453, 459, 464 A.2d 829 (1983). The determination of the extent to which access to records should be granted to the defendant must be made on a case by case basis. Id.

In this case, the trial court diligently weighed these competing interests and determined that the file contained no information that related to Acevedo's credibility as a witness. The trial court thus prohibited the defendant from engaging in what would have become an unwarranted "fishing expedition" into the personnel records of a private citizen. Our review of the sealed file in the record leads us to no different conclusion than that reached by the trial court. The simple answer to the defendant's second claim is that the trial court did not abuse its discretion in denying the defendant access to the police personnel file.

## B

### TESTIMONY THAT THE MURDER WEAPON HAD BEEN REPORTED STOLEN

During an offer of proof, outside of the presence of the jury, Detective Stephen Kumnick testified that a National Crime Information Center computer check had revealed that the gun that was seized from the defendant had been stolen a year earlier. The state proffered this evidence because possession of a stolen handgun might lead the jury to infer the defendant's

criminal intent. The defendant objected on the ground that its probative weight was outweighed by the prejudicial effect of the evidence. The court overruled the defendant's objection, but limited the direct examination on the subject to asking Kumnick only whether he had checked and found out that the gun had been reported stolen.[12] On appeal, the defendant renews his objection to the admission of the evidence because of its prejudicial effect.

"The rules governing the admissibility of evidence of a criminal defendant's prior misconduct are well established." *State* v. *Sierra,* supra, 428. Although as a general rule such evidence is inadmissible as proof of the defendant's bad character or criminal tendencies, it is admissible for other purposes, such as proof of intent, identity, malice, motive, a system of criminal activity, or an element of the crime. *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982). Such evidence may also be used to corroborate crucial prosecution testimony. *United States* v. *Everett,* 825 F.2d 658, 660 (2d Cir. 1987), cert. denied, 484 U.S. 1069, 108 S. Ct. 1035, 98 L. Ed. 2d 999 (1988); *State* v. *Mooney,* 218 Conn. 85, 126–29, 588 A.2d 145, cert. denied, 613 U.S. 224, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991).

To be admitted under one of these exceptions, the evidence must meet two requirements: (1) it must be relevant and material to the exception claimed; and (2) its probative value must outweigh its prejudicial effect. *State* v. *Duntz,* 223 Conn. 207, 240, 613 A.2d 224 (1992); *State* v. *Sierra,* supra, 429; *State* v. *Braman,* 191 Conn. 670, 676, 469 A.2d 760 (1983). "We recognize that this balancing process is an inherently difficult one, and will reverse the trial court's decision only when it is mani-

[12] The trial court did not allow the state to elicit in front of the jury that other weapons had been reported stolen at the same time from the same store and that a warrant had been obtained for the arrest of a suspect.

fest that an abuse of discretion or an injustice has occurred." *State* v. *Marra,* 215 Conn. 716, 738, 579 A.2d 9 (1990); *State* v. *Mooney,* supra, 127. With these well established axioms as our guide, we conclude that the trial court did not abuse its discretion by admitting evidence that the gun found on the defendant at the time of the shooting had been reported stolen.

The proffered evidence, as limited by the trial court's ruling, was relevant to the issue of intent. *United States* v. *Carter,* 801 F.2d 78, 84 (2d Cir.), cert. denied, 479 U.S. 1012, 107 S. Ct. 657, 93 L. Ed. 2d 712 (1986); *United States* v. *Day,* 591 F.2d 861, 872 (D.C. Cir. 1978). Ordinarily, evidence of a prior theft of a gun used in the commission of a crime may provide the basis for an inference of criminal intent. The jury could infer that the possessor of the gun intended to use it to commit a crime, because there would be no record by which it could be traced to the defendant. *United States* v. *Day,* supra. Thus, such evidence might suggest to the jury that the proof of a person's intent to commit an illegal act was enhanced by the fact that he possessed a stolen handgun.[13] Furthermore, the trial court properly determined that the probative value of this evidence outweighed its prejudicial effect. The court, outside of the presence of the jury, conducted a full hearing in which it allowed the defendant to argue extensively against the offer of proof. The court ruled that the state's questioning of Kumnick before the jury would be limited, for the specific purpose of diminishing its prejudicial impact. The standards that guide our review of whether the potential prejudicial effect of relevant evidence outweighs its probative value are well settled. "This court has previously enumerated situa-

---

[13] Furthermore, under the circumstances of this case, evidence that the gun had been stolen was relevant to the issue of identity because it tended to explain why the police could not trace ownership of the gun either to Figueroa or to the defendant.

tions in which the potential prejudicial effect of relevant evidence would counsel its exclusion. Evidence should be excluded as unduly prejudicial: (1) where it may unnecessarily arouse the jury's emotions, hostility or sympathy; (2) where it may create distracting side issues; (3) where the evidence and counterproof will consume an inordinate amount of time; and (4) where one party is unfairly surprised and unprepared to meet it. *State* v. *DeMatteo,* 186 Conn. 696, 702–703, 443 A.2d 915 (1982)." *State* v. *Rinaldi,* 220 Conn. 345, 356, 599 A.2d 1 (1991).

Nothing in the evidence that the handgun had been reported stolen a year earlier embraces the concerns expressed in the standards of review set forth in *DeMatteo.* The inherent danger in allowing evidence of the defendant's prior bad acts is the tendency of the jury to believe that the defendant had a predisposition to commit the crime with which he is now charged. *State* v. *Braman,* supra, 675. This potential for prejudice is reduced, however, when the prior misconduct is dissimilar from the act for which the defendant is currently being tried. Possession of a stolen weapon and murder are disparate acts of misconduct. In light of the evidence of murder, the jury's emotions were not likely to have been aroused by the evidence that the murder had been committed with a stolen handgun. We conclude that no injustice has been done by virtue of the trial court's ruling; see *State* v. *Echols,* 203 Conn. 385, 393, 524 A.2d 1143 (1987); and that the trial court properly admitted evidence that the handgun was stolen as probative of the the defendant's intent to commit an illegal act.

The judgment is reversed and the case is remanded for a new trial consistent with this opinion.

In this opinion PETERS, C. J., BORDEN and SANTANIELLO, Js., concurred.

BERDON, J., concurring and dissenting. I agree with the court that the defendant's constitutional right to confrontation was violated when the trial court improperly limited his cross-examination of one of the state's witnesses. I also agree that the trial court did not abuse its discretion in denying the defendant access to the police personnel file. Nevertheless, I disagree with the court's approval of the admission of evidence that is irrelevant and highly prejudicial—that is, the testimony that the gun that was used in the crime and found in the possession of the defendant was stolen.

Evidence of the defendant's prior misconduct, "although not ordinarily admissible to prove the bad character or criminal tendencies of the accused, may be allowed for the purpose of proving many different things, such as intent, identity, malice, motive or a system of criminal activity." *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982). The analysis used in determining whether evidence of prior misconduct is admissible requires a two part inquiry: "first, whether the evidence was relevant and material to an acceptable purpose, and second, if so, whether its probative value outweighed its prejudicial tendency." *State* v. *Morowitz,* 200 Conn. 440, 443, 512 A.2d 175 (1986).

The court's analysis of whether evidence that the gun was stolen was admissible is flawed. For such evidence to be relevant, whether it is offered to prove criminal intent or for some other acceptable purpose, there must be evidence that the defendant stole the gun or knew it was stolen. In *State* v. *Wilson,* 199 Conn. 417, 513 A.2d 620 (1986), this court made it clear that there must be evidence establishing a connection between the defendant and the act of misconduct in order for the latter to be relevant. In *Wilson,* which was an appeal of a conviction of first degree manslaughter of a baby girl, we reversed the trial court for admitting evidence that the child victim had been abused on previous occa-

sions. We held that "before such evidence can have *any* probative value, there must be a preliminary showing sufficient to support a jury finding that the defendant, in fact, caused the prior injury." (Emphasis in original.) Id., 449;[1] cf. 1 C. McCormick, Evidence (4th Ed. 1992) § 190, p. 809. In a decision made under Rule 404 (b) of the Federal Rules of Evidence,[2] the Supreme Court of the United States held that "similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the *defendant was the actor.*" (Emphasis added.) *Huddleston* v. *United States,* 485 U.S. 681, 689, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988).

There is not a scintilla of evidence in this case that the defendant either stole the gun or knew it was stolen. Nevertheless, the state argues, and the majority of this court agrees, that evidence that the gun was stolen is relevant even if the defendant did not commit the theft, because mere *possession* of a stolen gun demonstrates a "general intent" to act illegally.[3] The court relies on

[1] In *State* v. *Wilson,* 199 Conn. 417, 449–50, 513 A.2d 620 (1986), we also pointed out the following: "We have held in an analogous line of cases that it is reversible error for the trial court to allow into evidence articles seized from the defendant which tend to indicate criminal propensity when those articles are not connected to the commission of the crime charged. *State* v. *Girolamo,* 197 Conn. 201, 206, 496 A.2d 948 (1985) (weapons); *State* v. *Onofrio,* 179 Conn. 23, 31, 425 A.2d 560 (1979) (weapons); *State* v. *Acklin,* 171 Conn. 105, 115, 368 A.2d 212 (1976) (rope and stocking masks); *State* v. *Ferraro,* 160 Conn. 42, 45, 273 A.2d 694 (1970) (guns, ammunition, ski masks); *State* v. *Johnson,* 160 Conn. 28, 31, 273 A.2d 702 (1970) (dynamite). The rationale of these cases is that, '[a]bsent such a connection, the balance of scales clearly tips against the probative value of the evidence.' *State* v. *Onofrio,* supra, 31."

[2] Rule 404 (b) of the Federal Rules of Evidence (1988) states in relevant part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[3] On appeal, the state also argues that this evidence is relevant to the issue of identity because it tends to explain why the police could not trace

two cases—*United States* v. *Day,* 591 F.2d 861 (D.C. Cir. 1978), and *United States* v. *Carter,* 801 F.2d 78 (2d Cir.), cert. denied, 479 U.S. 1012, 107 S. Ct. 657, 93 L. Ed. 2d 712 (1986)—both of which are inapposite. In *Day,* the defendant entered a guilty plea to a charge of stealing several shotguns from a store. Evidence of this crime was introduced during the trial of the defendant on charges of murder and possession of sawed-off shotguns. The fact that the defendant had stolen the guns was relevant to identify the defendant as a participant in the crimes charged, both of which involved the *same* guns that were stolen by the defendant. *Carter* must be distinguished from the present case because in *Carter* defense counsel opened the door to the admission of evidence that the defendant's guns were stolen when he suggested to the jury during his opening remarks that ordinary people can own multiple guns. The court held that evidence that the guns were stolen, combined with other facts, was relevant to rebut defense counsel's argument that the defendant was just an ordinary person.

In a case almost identical to this, the Idaho Appellate Court in *State* v. *Cook,* 106 Idaho 209, 677 P.2d 522 (Ct. App. 1984), rejected the argument that evidence that a gun was stolen was probative of the defendant's guilt of robbery. The state in *Cook* argued that "because stolen weapons, being hard to trace, are frequently used in robberies," the evidence was relevant even without any proof that the defendant stole the gun. Id., 217. The Idaho court wholly rejected this argument, which is the same argument being made by the state in this case. Id.; see also *State* v. *Richard-*

---

the ownership of the gun. This ground of relevancy, however, was not raised at trial and, therefore, should not be relied upon here. See *Brown* v. *Connecticut Light & Power Co.,* 145 Conn. 290, 294, 141 A.2d 634 (1958) (if a potential ground of admissibility for challenged evidence is not offered at trial, it will not be considered on appeal).

*son,* 791 S.W.2d 885, 887 (Mo. Ct. App. 1990) (the fact that the defendant's gun was stolen was irrelevant to the issue of guilt for unlawful use of a weapon, and was similarly irrelevant "to prove motive, intent, absence of mistake or accident, a common plan, or identity").

Furthermore, under the facts of this case, it defies logic to assert that such evidence is relevant. The state's evidence indicated that the gun was stolen from a store in another state one year before the shooting. No evidence was introduced to show that the defendant had a plan or design to kill or injure the victim at that time or at any other time. As this court acknowledges in its majority opinion, on the night of the incident there was a confrontation between the defendant and the victim that escalated when the victim punched a third party. If the defendant killed the victim, it was the result of the unplanned and emotional melee that erupted on the night of the shooting. It is illogical to infer that the defendant intended to shoot the victim because he had possession of a gun that was stolen one year before by some unknown person.

Long ago, this court held that evidence is immaterial and remote if there is "such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in proof of the latter." *State* v. *Kelly,* 77 Conn. 266, 269, 58 A. 705 (1904); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 8.1.1.

Assuming by some stretch of the imagination that possession of a stolen gun is relevant to the issue of intent, its prejudice far outweighs its probative value. Although we vest in our trial judges a "judicial discretion" to determine whether "the probative value of the 'other crimes' evidence outweighs its prejudicial tendency"; *State* v. *Onofrio,* 179 Conn. 23, 29, 425 A.2d

560 (1979); that discretion is not unbridled. To determine whether there has been an abuse of such discretion, we must start with the general rule that "excludes the evidence so as to avoid the danger of prejudice against the defendant which may result from the admission of such evidence." (Internal quotation marks omitted.) Id., 28. Because of the inherent dangers, the trial court does not possess as broad a discretion as the majority of this court would have us believe.

In *State* v. *Sierra,* 213 Conn. 422, 435, 568 A.2d 457 (1990), we made it clear that "the trial court's discretion [in determining whether prior crimes evidence is admissible] is limited. The trial court's discretion to admit other crimes evidence imports something more than leeway in decision-making. . . . Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . When assessing the admissibility of other crimes evidence, the application of a mechanical test determining that the proffered evidence fits within some class of exception to the rule of nonadmissibility, may obscure sight of the underlying policy of protecting the accused against unfair prejudice. That policy ought not to evaporate through the interstices of the classification." (Citations omitted; internal quotation marks omitted.) Other crimes evidence should only be admitted if it is particularly probative of intent or another critical element. *State* v. *Murrell,* 7 Conn. App. 75, 79–80, 507 A.2d 1033 (1986).

This court in its majority opinion cites *State* v. *Rinaldi,* 220 Conn. 345, 356, 599 A.2d 1 (1991), for the idea that evidence should be excluded as unduly prejudicial only if it falls within one of four narrow categories. In *Rinaldi,* however, this court held that these categories are not exclusive and that additional factors may be taken into consideration. Id. Further, this

court has held that "the discretion invested in the trial court is not a license to depart from the principle that evidence of other crimes, having no substantial relevancy except to ground the inference that the accused is a bad person and hence probably committed this crime, must be excluded." *State* v. *Onofrio,* supra, 30. Finally, "[t]his court has consistently indicated that [a]ny improper evidence that may have a tendency to excite the passions, awaken the sympathy, or influence the judgment, of the jury, cannot be considered as harmless." (Internal quotation marks omitted.) *State* v. *Girolamo,* 197 Conn. 201, 206–207, 496 A.2d 948 (1985).

In his treatise on Connecticut evidence, Professor Tait discusses several factors that should be considered in determining whether the prejudicial effect of other crimes evidence outweighs its probative value: "Discretion is not the mechanical application of some classification or exception to the general rule of nonadmissibility; rather, a balance must be struck. Can the issue be demonstrated by other evidence? Is the probative value marginal, or are its prejudicial tendencies clear? Moreover, discretionary leeway lies on the side of exclusion, empowering the trial judge to exclude evidence of other crimes, even if it has substantial independent relevance, if it will stir the jury beyond rational considerations." C. Tait & J. LaPlante, supra, § 8.3.2 (c); see also *State* v. *Onofrio,* supra.

The introduction of evidence that the gun was stolen was particularly prejudicial in this case. As indicated above, the remoteness in time of the theft, together with its lack of any relationship to the crime charged, indicates that it had little, if any, probative value, while its prejudicial impact was great. Furthermore, the central issue in this case was identification, not intent, further undermining the probative value of this evidence.

The admission of evidence that the gun was stolen accomplished one purpose, and that was "to show an evil disposition of [the] accused, and especially the predisposition to commit the crime with which he is now charged." *State* v. *Braman,* 191 Conn. 670, 675, 469 A.2d 760 (1983). We and every other jurisdiction have rejected the admissibility of evidence for that purpose. "When the sole purpose of the other crimes evidence is to show some propensity to commit the crime at trial, there is no room for ad hoc balancing. The evidence is then unequivocally inadmissible—this is the meaning of the rule against other crimes evidence." 1 C. McCormick, supra, § 190, p. 811. As the District of Columbia Circuit Court of Appeals noted in *United States* v. *Foskey,* 636 F.2d 517 (D.C. Cir. 1980): "It is fundamental to American jurisprudence that 'a defendant must be tried for what he did, not for who he is.'" Id., 523, quoting *United States* v. *Myers,* 550 F.2d 1036, 1044 (5th Cir. 1977), on appeal after remand, 572 F.2d 506 (5th Cir.), cert. denied, 439 U.S. 847, 99 S. Ct. 147, 58 L. Ed. 2d 149 (1978).

Accordingly, on retrial of this matter, I would exclude this evidence.