STATE OF CONNECTICUT *v.* CHARLES JONES
(AC 18786)

STATE OF CONNECTICUT *v.* JASPER DUDLEY
(AC 19057)

Landau, Mihalakos and Pellegrino, Js.

Argued May 3—officially released November 28, 2000

*Cameron Dorman*, special public defender, for the appellants (defendants).

*Frederick W. Fawcett*, assistant state's attorney, with whom, on the briefs, were *Jonathan C. Benedict*, state's attorney, and *Joseph T. Corradino*, assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendants, Jasper Dudley and Charles Jones, each appeal from judgments of conviction, rendered following a joint jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and conspiracy to commit robbery in the first degree in violation of General Statutes § 53a-48.[1] Both defendants claim that (1) the trial court improperly restricted their cross-examination of a prosecution witness, (2) the court improperly failed to conduct an adequate inquiry into allegations of juror misconduct and improperly ruled that there was no jury misconduct (3) the state improperly failed to disclose the arrest record of a prosecution witness and (4) the court improperly admitted statements of coconspirators. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On December 23, 1996, at approximately 1 p.m., the defendants, along with two other individuals, Michael Capozziello and Darius Miller, participated in the armed robbery of a Bridgeport automotive store. Capozziello subsequently confessed to the crime, implicated the defendants and

---

[1] We address the defendants' appeals in one opinion because both defendants presented identical issues, submitted identical briefs and stipulated at oral argument that the arguments as to Jones would apply also to Dudley.

testified against them at trial. Additional facts will be discussed where relevant to the issues on appeal.

## I

The defendants claim first that the court improperly restricted their cross-examination of Capozziello, a key prosecution witness. They claim that the restrictions violated their rights to confront the witnesses against them under article first, § 8,[2] of the constitution of Connecticut, and the sixth[3] and fourteenth[4] amendments to the United States constitution.[5] In addition, they claim that the court abused its discretion in imposing those restrictions.

The following additional facts are relevant to these claims. Prior to the robbery at issue, Capozziello and members of his family were acquainted with Miller. At some point prior to the robbery, Miller was arrested in connection with the alleged sexual assault of one of Capozziello's cousins, and Miller also had disagreements with members of the Capozziello family.

Following Capozziello's direct testimony, the defendants sought to question Capozziello regarding the influ-

[2] Article first, § 8, of the constitution of Connecticut provides in relevant part: "In all criminal prosecutions, the accused shall have a right to . . . be confronted by the witnesses against him . . . ."

[3] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . ."

[4] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[5] Although the defendants did not explicitly argue at trial that the restrictions on cross-examination violated their rights under either the state or federal confrontation clauses, they nevertheless effectively preserved their constitutional claims by challenging the court's rulings on the ground of bias and by taking the proper exceptions. See *State* v. *Santiago*, 224 Conn. 325, 330–31 n.6, 618 A.2d 32 (1992). Because they have not argued that their state constitutional rights are distinct from their federal constitutional rights, for purposes of this analysis we treat those rights as coextensive. See *State* v. *Provost*, 251 Conn. 252, 256 n.4, 741 A.2d 295 (1999).

ence and possible involvement of his mother in implicating the defendants in the robbery. The defendants argued that the questioning was relevant as to the witness' credibility and to establish bias.[6] The court, however, sustained the state's objections to that line of inquiry.

"The general rule is that restrictions on the scope of cross-examination are within the sound discretion of the trial court . . . but this discretion comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment." (Citations omitted.) *State* v. *Gaynor*, 182 Conn. 501, 508, 438 A.2d 749 (1980); see also *State* v. *Thompson*, 191 Conn. 146, 148, 463 A.2d 611 (1983).

"The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Citations omitted; internal quotation marks omitted.) *State* v. *Santiago*, 224 Conn. 325, 331, 618 A.2d 32 (1992); see also *Davis* v. *Alaska*, 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v. *Lubesky*, 195 Conn. 475, 481–82, 488 A.2d 1239 (1985). "In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions

---

[6] The defendants argue in their briefs that Capozziello's mother "was involved in" the case against Miller relative to the sexual assault of Capozziello's cousin, citing to a portion of the transcript to support that contention. After reviewing the relevant language, we conclude that the cited portion of the transcript does not support their contention.

that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial. . . . [T]he denial of all meaningful cross-examination into a legitimate area of inquiry fails to comport with constitutional standards under the confrontation clause." (Citation omitted; internal quotation marks omitted) *State* v. *Santiago*, supra, 331; see also *State* v. *Roma*, 199 Conn. 110, 116, 505 A.2d 717 (1986).

Once it has been established that constitutional standards have been met, the "trial court has broad discretion in ruling on the admissibility of evidence. The determination of the relevancy and remoteness of evidence is within the sound discretion of the trial court. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Sound discretion . . . means a discretion that is not exercised arbitrarily or wilfully . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling. . . . In considering the relevancy of evidence, we ask whether it tends to establish the existence of a material fact or to corroborate other direct evidence in a case. . . . If the evidentiary ruling is not of constitutional dimension, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." (Citations omitted; internal quotation marks omitted.) *McNeff* v. *Vinco, Inc.*, 59 Conn. App. 698, 701–702, 757 A.2d 685 (2000). Although "[c]ross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted . . . [t]he confrontation clause does not . . . suspend the rules of evidence . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Reeves*, 57 Conn. App. 337, 344, 748 A.2d 357 (2000).

With these standards in mind, we conclude that the defendants' cross-examination of Capozziello satisfied constitutional requirements and, further, that the court did not abuse its discretion in limiting the questioning as it did. A review of the record discloses that the defendants had a more than ample opportunity to cross-examine Capozziello regarding his bias against Miller and motives in testifying. In response to the defendants' questioning, Capozziello spoke of the incidents leading to a strained relationship between his family and Miller, of his mother's role in the robbery investigation, and of his personal dislike for Miller and the other two defendants. The jury was also aware that he had received a favorable plea agreement in exchange for his testimony against the defendants. Overall, it cannot be said that the jury had inadequate information with which to judge Capozziello's credibility as a witness. It also is not the case that there was no meaningful opportunity to inquire into Capozziello's potential bias. Although "the constitutional right of cross-examination guarantees the opportunity for effective cross-examination . . . that does not mean cross-examination 'that is effective in whatever way, and to whatever extent, the defense might wish.' *Delaware* v. *Fensterer*, [474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985)]. That right does not include, in a word, 'unrestricted' cross-examination." *State* v. *Reeves*, supra, 57 Conn. App. 353. The court limited the defendants' questioning about Capozziello's mother primarily on the ground of relevancy. On the basis of our review of the record and briefs, we cannot say that the court abused its discretion in ruling as it did.

## II

Each defendant also claims that the court improperly failed to conduct an adequate inquiry into allegations of juror misconduct and improperly ruled that there was no juror misconduct. The defendants claim that

there was evidence of juror misconduct that the court did not find and properly address, and that provided grounds for granting their motions for a new trial. We do not agree.

The following additional facts and procedural history are relevant to our resolution of this claim. After the conclusion of the trial, and after the verdict was accepted by the court, the court clerk met with the jurors to distribute to them the customary juror questionnaires. At that time, one of the jurors mentioned something to the clerk that gave her cause to believe that the juror may have had information about Jones' criminal history that was not part of the evidence in the present case. The clerk reported this to the court, which promptly questioned the juror regarding the statements made to the clerk. The court's inquiry centered on whether the juror had information that Jones had been involved in a robbery of a Subway Sandwich Shop. After the court conducted the inquiry, it determined that the juror had no such information and that there was no impropriety. The court, therefore, denied the defendants' motions for new trials.

"Jury impartiality is a core requirement of the right to trial by jury guaranteed by the constitution of Connecticut, article first, § 8, and by the sixth amendment to the United States constitution. . . . [An] accused [is entitled to] a fair trial by a panel of impartial, indifferent jurors. . . . The modern jury . . . determines the case solely on the basis of the evidence and arguments . . . . [These] rules . . . assure that the jury will decide the case free from external influences . . . .

"The question is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial. . . . Where, however, the trial court was in no way responsible for the juror misconduct . . . [the] defendant . . . bears the burden of

proving that actual prejudice resulted from that misconduct." (Internal quotation marks omitted.) *State* v. *Portee*, 55 Conn. App. 544, 565–66, 740 A.2d 868 (1999), cert. denied, 252 Conn. 920, 744 A.2d 439 (2000).

"Our review of the scope of the trial court's preliminary inquiry into allegations of jury misconduct is [settled] . . . . [A] trial court must conduct a preliminary inquiry, on the record, whenever it is presented with any allegations of jury misconduct in a criminal case . . . . [T]he trial court has broad discretion to determine the form and scope of the proper response to allegations of jury misconduct . . . . Our role as an appellate court is limited to a consideration of whether the trial court's review of alleged jury misconduct can fairly be characterized as an abuse of its discretion.

"[T]he trial court should consider the following factors in exercising its discretion as to the form and scope of a preliminary inquiry into allegations of jury misconduct: (1) the criminal defendant's substantial interest in his constitutional right to a trial before an impartial jury; (2) the risk of deprivation of the defendant's constitutional right to a trial before an impartial jury . . . and (3) the state's interests of, inter alia, jury impartiality, protecting jurors' privacy and maintaining public confidence in the jury system." *State* v. *Santiago*, 245 Conn. 301, 331, 715 A.2d 1 (1998).

"[A]ppellate review of a trial court's decision granting or denying a motion for a new trial must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided. . . . [W]e have accordingly confined our role to a determination of whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Portee*, supra, 55 Conn. App. 566.

The defendants had the burden of proving misconduct and the burden of establishing the prejudicial

impact of that misconduct. See *State* v. *Rhodes*, 248 Conn. 39, 47, 726 A.2d 513 (1999). The defendants failed to satisfy that burden. The court conducted an adequate inquiry into potential juror misconduct, and the court found the juror's testimony to be credible.[7] See *State*

---

[7] The court questioned the juror in relevant part as follows:

"[The Court]: . . . [I]t came to my attention through my clerk . . . that you expressed something in the . . . nature of knowledge as to some of the background of [Jones] . . . other than what came out in evidence. . . . [T]here was a mention by you of the word Subway. . . .

"[Juror]: No.

"[The Court]: Subway Sandwich Shop?

"[Juror]: Well, I had lunch there. . . .

"[The Court]: [Were you] aware that [Jones] at one time was charged with attempting to rob or maybe did rob a Subway Sandwich Shop . . .

"[Juror]: No.

"[The Court]:—[A]nything of that nature?

"[Juror]: No.

"[The Court]:—[A]t the time of the deliberations, did you discuss with any other juror anything in the nature of what [Jones] might have done other than what [was in] . . . evidence . . . .

"[Juror]: No, we didn't. All we discussed was the evidence . . . .

"[The Court]: . . . [S]o . . . there was no mention of . . . [Jones] having had some other relationship to a criminal act in another location other than the [auto parts store].

"[Juror]: No. All we discussed was what was going on in the trial. . . .

"[The Court]: [So] you had no knowledge or even a suggestion in your mind that he had done something else recently in the way of a criminal act?

"[Juror]: No. No.

"[The Court]: Okay. All right."

The court then excused the juror and in relevant part informed counsel as follows:

"The Court: . . . If the [juror] says no, I cannot go beyond his statement in a collateral attack . . . .

"[Assistant State's Attorney]: I think Your Honor has covered it . . . and I think that the court is able to find on [on the basis of the juror's answers] that there was no outside contamination of the jury . . . .

"The Court: . . . [I]t does seem that the juror has indicated quite emphatically that nothing in the nature of collateral knowledge entered into this particular verdict.

"[Counsel for Miller]: I tend to agree with that . . . . I thought that your inquiry was sufficient. . . .

"[Counsel for Jones]: I'd ask the court to further inquire whether he had knowledge that [Jones] was incarcerated during the course of the trial.

"The Court: [I]f you want me to ask that question I certainly will. . . .

v. *Brown*, 235 Conn. 502, 527–28, 668 A.2d 1288 (1995) ("the trial judge . . . is in a superior position to evaluate the credibility of allegations of jury misconduct,

"[Counsel for Dudley]: Nothing, Your Honor."

The juror then reentered the courtroom, and the following colloquy ensued:

"The Court: . . . I want you to understand that whatever your answers were, whether they were negative or positive, in no way would reflect on your . . . being in trouble. . . .

"The Court: . . . So . . . your answers are the same, understanding that.

"[Juror]: . . . Yes, sir.

"The Court: . . . [W]ere you aware at any time that [Jones] was incarcerated while on trial?

"[Juror]: No, but we had an idea . . . .

"The Court: . . . And did that seem to—

"[Juror]: No, it didn't.

"The Court:—[affect] the deliberations of yourself?

"[Juror]: No, no."

The court then excused the juror, and the following colloquy in part ensued between the court and counsel:

"[Counsel for Jones]: . . . I just ask the court to inquire further as to whether [the juror] was aware that [another] juror had been arrested pursuant to not showing up [for trial] and whether that was a concern of his when he came in [to court] and whether it impacted upon his . . . willingness to tell us the whole truth here. . . .

"[Counsel for Dudley]: . . . I was thinking the same thing."

The juror then reentered the courtroom, and the following colloquy took place:

"The Court: . . . Are you aware of anything . . . that related to . . . your being chosen as a regular juror?

"[Juror]: Yes . . . .

"The Court: Did that in any way affect . . . your . . . being candid or truthful . . . .

"[Juror]: . . . [T]hat didn't even enter my mind . . . .

"The Court: . . . And do you still indicate to the court that you were not aware in any way of [Jones] . . . concerning a robbery at a Subway Sandwich Shop . . . .

"[Juror]: No. . . .

"The Court: And that was not discussed among the other jurors at the time [of deliberations]—

"[Juror]: It was not, no."

The court then excused the juror and explained to counsel that the court had no reason to believe that the testimony of the juror was anything but the truth. Thereafter, the court allowed counsel for Jones to question the court clerk under oath regarding what she believed the juror had said to

whatever their source"). On the basis of that evidence, the court concluded that the court clerk had misinterpreted a statement made by one of the jurors and that there was no juror misconduct. Because we have concluded that the court properly conducted an inquiry into whether there was juror misconduct and concluded that there was no such misconduct, there is no need to discuss prejudice.

### III

Both defendants claim next that the state improperly failed to disclose exculpatory material prior to trial. They argue that they are entitled to new trials because the state withheld information concerning Capozziello's arrest record in violation of *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), thereby depriving them of a fair trial. We disagree.

The following additional facts are relevant to our resolution of this claim. Following the trial of the defendants and during the sentencing of Capozziello, the defendants learned that Capozziello had been arrested the day after the robbery at issue and charged with larceny in conjunction with an unrelated incident. The state claims that it was unaware of the arrest until the day of Capozziello's sentencing.

The defendants were entitled to the disclosure of exculpatory evidence under the United States constitution and the Connecticut constitution. See id., 86; *State* v. *Simms*, 201 Conn. 395, 405 & n.8, 518 A.2d 35 (1986). To prevail on their claim, however, they must establish that the state suppressed the evidence after a request

her. The clerk testified that the juror had approached her following the deliberations and questioned her as to which Subway Sandwich Shop Jones had robbed. The court then stated that on the basis of the testimony of the clerk and the juror, the juror did not have knowledge that Jones had been involved in a prior robbery of a Subway Sandwich Shop. Counsel for the defendants excepted to that ruling.

by the defendants, that the evidence was favorable to the defendants and that the evidence was material. *State* v. *Correa*, 241 Conn. 322, 360–61, 696 A.2d 944 (1997).

"[N]ondisclosed exculpatory evidence will be considered material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *State* v. *Ortiz*, 252 Conn. 533, 545, 747 A.2d 487 (2000). "The determination of materiality has been said to be inevitably fact-bound and like other factual issues is committed to the trial court in the first instance." (Internal quotation marks omitted.) *State* v. *Correa*, supra, 241 Conn. 361. Moreover, "the mere possibility that an item of undisclosed evidence might have helped the defense or might have affected the outcome of the trial, however, does not establish materiality in the constitutional sense." (Internal quotation marks omitted.) *State* v. *Ortiz*, supra, 546.

The defendants argue that the evidence regarding the arrest would have been used to impeach Capozziello's credibility, and claim that it would have established bias, interest and his propensity for untruthfulness. That evidence, however, would have been cumulative as to bias and interest, since the jury was aware that in exchange for his testimony, Capozziello was charged only with conspiracy to commit robbery in the third degree with a recommendation for a three year sentence for participating in the robbery of the automotive store. Further, the defendants did not proffer evidence as to how the conduct precipitating the larceny charge would establish Capozziello's character for untruthfulness. Evidence of a specific act that is probative of Capozziello's character for untruthfulness would be allowed at the discretion of the court, and would be admissible only if the specific act is probative of his character for

untruthfulness, not merely general bad character.[8] *State v. Demers*, 209 Conn. 143, 156–57, 547 A.2d 28 (1988); see Conn. Code Evid. § 6-6 (b), commentary. In the absence of a proffer, therefore, that the larceny charge affected Capozziello's veracity and because the evidence would have been cumulative in other respects, we cannot say that the disclosure of Capozziello's arrest prior to the defendants' trial was material and would have affected the outcome of the trial. Accordingly, the defendants cannot prevail on this claim.

IV

Both defendants claim finally that the court improperly admitted statements of the coconspirators, including the defendants. They argue that the state failed to establish, through independent evidence, that a conspiracy existed and that the defendants participated in the conspiracy prior to the court's allowing Capozziello to testify that Miller or Dudley told him that Jones would rob anything, and that Jones had discussed the possibility of robbing an Army-Navy store the same day as the robbery at issue here. We disagree.

Statements made by coconspirators are properly admitted as an exception to the hearsay rule. *State v. Couture*, 218 Conn. 309, 322, 589 A.2d 343 (1989); see Conn. Code Evid. § 8-3 (1) (D). Before statements of a coconspirator may be admitted, however, "the trial judge must make a preliminary determination that there is sufficient independent evidence to establish the following: (1) that a conspiracy existed . . . (2) that the conspiracy was still in existence at the time the statement was made . . . (3) that the declarations were made in furtherance of the conspiracy . . . and (4) that both the declarant and the defendant participated in the conspiracy . . . . The court must make its preliminary

---

[8] The evidence also could have been used to establish bias and interest, but because it would be merely cumulative, it would not be material.

determination by a fair preponderance of the evidence independent of the hearsay utterances . . . . Once the threshold requirement for admissibility is satisfied by a showing of a likelihood of an illicit association between the declarant and the defendant . . . the conspirators' statements are admissible . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Vessichio*, 197 Conn. 644, 654–55, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986).

To establish the crime of conspiracy under § 53a-48, "the state must show that there was an agreement between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. . . . The existence of a formal agreement between the parties need not be proved; it is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act. . . . A conviction of the crime of conspiracy can be based on circumstantial evidence, for conspiracies, by their very nature, are formed in secret and only rarely can be proved otherwise than by circumstantial evidence. . . . The evidence will be construed in a way most favorable to sustaining the preliminary determinations of the trial court; its conclusions will not be disturbed on appeal unless found to be clearly erroneous." (Citations omitted; internal quotation marks omitted.) Id., 656.

Before the court admitted the coconspirator statements, it had before it evidence that the defendants were in the same car as Miller and Capozziello, and that all four went to the auto parts store, and that Miller went into the store first, then returned to the car, at which point Capozziello and Jones entered the store. The court also heard evidence from two store employees that Jones had been in the store and was the individual who committed the robbery. Accordingly,

independent of the hearsay statements, there was sufficient evidence to prove that a conspiracy existed.

On the basis of our review of the record, we conclude that the court had sufficient evidence before it to conclude, by a preponderance of the evidence, that Capozziello and the defendants were involved in a conspiracy to commit robbery. The court, therefore, properly admitted Capozziello's statements.

The judgments are affirmed.

In this opinion the other judges concurred.