STATE OF CONNECTICUT *v.* RICHARD E. PROVOST
(AC 15651)

Spear, Dupont and Daly, Js.

Argued January 12—officially released June 9, 1998

*Sheila A. Huddleston,* with whom were *Charles L. Howard* and, on the brief, *James W. Bergenn* and *Tracey M. Lane,* certified legal intern, for the appellant (defendant).

*Judith Rossi*, senior assistant state's attorney, with whom were *Kevin Murphy*, assistant state's attorney, and, on the brief, *James Thomas*, state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Richard E. Provost, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2)[1] and risk of injury to a child in violation of General Statutes (Rev. to 1991) § 53-21.[2] The defendant claims that the trial court improperly: (1) precluded the cross-examination of a prosecution witness regarding her credibility in violation of the defendant's fundamental right to confront witnesses pursuant to both the sixth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut; and (2) permitted the prosecution to engage in misconduct during closing argument in violation of the defendant's due process right to a fair trial.[3] We affirm the judgment of the trial court.

The jury reasonably could have found the following relevant facts. During 1990 through 1991, the victim, M,

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes (Rev. to 1991) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb of such child is endangered, or its health is likely to be injured, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[3] The defendant did not provide a separate analysis of his state constitutional claims, as is required by *State* v. *Geisler*, 25 Conn. App. 282, 283 n.2, 594 A.2d 985 (1991), aff'd, 222 Conn. 672, 610 A.2d 1225 (1992). We, therefore, review only his federal constitutional claims.

a minor female, lived with her mother, J. In the winter of 1990, shortly before M's sixth birthday, J began dating the defendant, who was known to M as Rick. J often allowed the defendant to take M with him while he did errands, played racquetball, rode his motorcycle, and, on several occasions, the defendant was alone with M at his residence. J ended her relationship with the defendant in November, 1991.

In January, 1994, M began exhibiting suicidal tendencies and a violent temper, often running away from home. J took M to the Wheeler Clinic in Plainville for a psychiatric evaluation. During the visit, M became severely agitated, had to be restrained, and was subsequently admitted to Mount Sinai Hospital in Hartford. Upon M's discharge from the hospital three days later, J and her sister, Darline, were informed by the hospital staff that M had a yeast infection and blood in her urine.

Following her discharge from the hospital, M spent a night at Darline's home. After bathing M, Darline, concerned about M's infection, began to talk with M about "good touch and bad touch" in an effort to learn whether anyone had touched M inappropriately. M told Darline that "Rick, mom's boyfriend," had hurt her inside, kissed her on the mouth, and "[gone] to the bathroom" on her. Darline immediately informed J about M's disclosures, and then reported the allegations to the department of children and families on February 6, 1994.

After a police investigation, the defendant was arrested and subsequently found guilty of sexual assault in the first degree and risk of injury to a child. This appeal followed.

I

The defendant first claims that the trial court improperly restricted his cross-examination of Darline, to

whom M had first revealed the sexual abuse. Specifically, the defendant contends that the trial court violated his sixth amendment right to confront his accusers by precluding the cross-examination of Darline with respect to her concern about whether any member of her family might have perpetrated the sexual abuse.

We first address the defendant's contention that this claim is of constitutional magnitude. At trial, the defendant characterized the nature and purpose of his cross-examination of Darline as relating to "credibility with what [Darline] can remember as to what she testified [to] on direct."[4] On appeal, however, the defendant for the first time characterizes this same cross-examination as an attempt to expose Darline's motive and interest in questioning M. This new claim is solely of an evidentiary nature. " 'Patently nonconstitutional claims that are unpreserved at trial do not warrant special consideration simply because they bear a constitutional label.' " *State* v. *Laws*, 36 Conn. App. 401, 411, 651 A.2d 273 (1994), cert. denied, 232 Conn. 921, 656 A.2d 671 (1995), quoting *State* v. *Golding*, 213 Conn. 233, 240, 567 A.2d 823 (1989). Because we do not review evidentiary claims that were not properly preserved; Practice Book (1998 Rev.) § 60-5 (formerly § 4061); *Dept. of Public Safety* v. *Freedom of Information Commission*, 242

---

[4] The following colloquy between the court and defense counsel is excerpted from the trial transcript:

"The Court: I want to know what your claim is.

"[Defense Counsel]: Oh, my claim simply is: [Darline] was concerned about the members of her family who could have caused this particular yeast infection. She brought it up on direct. That means I certainly can probe her particular concern about her family. And [the defendant] is certainly not her family.

\* \* \*

"The Court: Are you claiming anything other than third party culpability, so that I'm clear and the record is clear, counsel?

"[Defense Counsel]: No, I'm claiming it for credibility with regard to what she can remember as to what she testified [to] on direct."

Conn. 79, 91, 698 A.2d 803 (1997);[5] we will address only the issue of whether the cross-examination of Darline was improperly restricted with respect to the defendant's sixth amendment right, that is, the questioning of her credibility on direct examination.

" 'The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . .' " *State* v. *Gould*, 241 Conn. 1, 15–16, 695 A.2d 1022 (1997). " 'The confrontation clause does not, however, suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . Only relevant evidence may be elicited through cross-examination. . . . *State* v. *Barnes*, [232 Conn. 740, 746, 657 A.2d 611 (1995)]. . . . Moreover, it is well settled that questions of relevance are committed to the sound discretion of the trial court.' " (Citation omitted.) *State* v. *Gould*, supra, 16.

The defendant maintains that his questioning of Darline regarding M's infection was necessary cross-examination because, on direct examination, Darline had raised that very issue with respect to her concern that a family member may have been involved. We disagree. At trial, Darline specifically challenged this interpretation of her testimony.[6] Our review of the record reveals

---

[5] Review of an unpreserved claim under *State* v. *Golding*, supra, 213 Conn. 233, applies only when the claim is of a constitutional nature. Here, we have determined that the issue is purely an evidentiary question.

[6] The following trial testimony is excerpted from the transcript of the cross-examination of Darline:

"Q. And you asked her if somebody had sexually molested her?

"A. I didn't ask her that directly, no.

"Q. Well, you said you wanted to know whether it was somebody in your family. That's what you told us on direct.

"[Assistant State's Attorney]: I object. That was not—

"The Court: Excuse me. I think, again, the witness can indicate—

that the trial court sustained numerous objections from the prosecution on relevancy grounds because the defendant failed both to explain how the questions were relevant to Darline's credibility and to lay the requisite evidentiary foundation that would have allowed the questioning of Darline to evolve into an issue of third party culpability.[7]

It is well settled that "[e]vidence of third party culpability must directly connect the third party to the crime. It is not enough to show that another had the motive to commit the crime . . . nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused. . . . Unless the direct connection exists, it is within the discretion of the trial court to refuse to admit such evidence. . . . *State* v. *Colton*, 227 Conn. 231, 258, 630 A.2d 577 (1993)." (Internal quotation marks omitted.) *State* v. *Guess*, 44 Conn. App. 790, 811, 692 A.2d 849 (1997), aff'd, 244 Conn. 761, 715 A.2d 643 (1998).

Here, despite the court's request for an offer of proof, the defendant offered no evidence to connect a third party directly to M's alleged sexual abuse. Moreover, there was no evidence to suggest that M was in any

"[Assistant State's Attorney]: All right.

"The Court:—if she disagrees. And I think the witness is indicating that you disagree. Is that right, [Darline]?

"[Darline]: Yes.

"The Court: Okay.

"Q. So if I wrote down 'if it was somebody in the family' that you testified to, then I'd be wrong.

"A. I did not testify that it was somebody in the family. I testified that I was afraid who it might be. And if it was somebody in the family, I wanted to know to protect her."

[7] The following statement was made by the court to defense counsel during the cross-examination of Darline: "I'll let you have your say. But let me tell you what my concern is. We're not going to get into third party culpability unless you can show me something more directly than the fact that there may be other people in the house here."

way confused or uncertain about her statement that the alleged perpetrator was the defendant. Not only did the defendant misinterpret Darline's testimony when she stated that she simply asked M who had touched her, but the attempted questioning of Darline with respect to other family members was clearly an attempt to inculpate a third party, for which no direct evidence was proffered. Accordingly, we conclude that the court properly exercised its discretion in precluding the defendant from questioning Darline about other family members on cross-examination. This proper exercise of discretion did not violate the defendant's constitutional right to confrontation.

## II

The defendant next claims that the trial court improperly permitted the prosecution to engage in misconduct during its closing argument, depriving the defendant of his due process right to a fair trial in violation of the sixth and fourteenth amendments to both the United States constitution and article first, § 8, of the constitution of Connecticut.[8] Specifically, the defendant contends that during closing argument the prosecutor (1) made "numerous improper, inaccurate, and highly prejudicial remarks" while repeatedly asking the jury to draw inferences that he knew to be false and (2) improperly shifted the burden of proof to the defendant. The defendant concedes that this misconduct claim was unpreserved, and he now seeks review of this claim under either *State* v. *Golding,* supra, 213 Conn. 233, or the plain error doctrine pursuant to Practice Book (1998 Rev.) § 60-5 (formerly § 4061). Although the first two prongs of *Golding* are satisfied here, we find no merit to the claim pursuant to the third prong of *Golding.*[9]

[8] See footnote 3.

[9] Under *State* v. *Golding,* supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the

Finally, the conduct that the defendant challenges in this case does not rise to the level of plain error.[10]

## A

We have stated that "[p]rosecutorial misconduct can occur in the course of closing argument. . . . In order to deprive a defendant of his constitutional right to a fair trial, however, the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Citation omitted; internal quotation marks omitted.) *State* v. *Garrett*, 42 Conn. App. 507, 515, 681 A.2d 362, cert. denied, 239 Conn. 928, 929, 683 A.2d 397, 398 (1996).

Here, the defendant challenges the prosecutor's conduct solely as it related to closing argument. In determining whether this claim of prosecutorial misconduct deprived the defendant of his due process right to a fair trial, we must first decide whether the prosecu-

following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any of these conditions, the defendant's claim will fail."

[10] The defendant here merely asserts plain error and does not brief any plain error issues for our review. Further, plain error review " 'is reserved for those truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' " *State* v. *Austin*, 244 Conn. 226, 241, 710 A.2d 732 (1998), quoting *State* v. *Ortiz*, 217 Conn. 648, 659–60, 588 A.2d 127 (1991). This is not such a case.

tor's remarks were, in fact, improper, and, if so, whether they substantially prejudiced the defendant. *State* v. *Oehman*, 212 Conn. 325, 336, 562 A.2d 493 (1989). In so doing, "we focus on several factors: (1) the extent to which the misconduct was invited by defense conduct or argument; (2) the severity of the conduct; (3) the frequency of the conduct; (4) the centrality of the misconduct to the critical issues of the case; (5) the strength of the curative instructions adopted; and (6) the strength of the state's case." *State* v. *Williams*, 41 Conn. App. 180, 190, 674 A.2d 1372, cert. denied, 237 Conn. 925, 677 A.2d 950 (1996).

We first consider the defendant's claim that the prosecutor's closing argument was so misleading to the jury that it amounted to an unconstitutional denial of due process.[11] Specifically, the defendant contends that "[i]t was unfair, as a threshold matter, to argue that the defendant's guilt was established by the absence of evidence that the prosecutor had [succeeded] in excluding on the ground that it was irrelevant." While the defendant argues that several statements that were made by the prosecutor during closing argument were improper,[12] he is referring in this claim to the fact that

[11] In his further attempt to advance what we interpret as a third party culpability theory, the defendant also contends that the prosecutor's conduct during closing argument amounted to misconduct because the prosecutor knew that M had recently accused a cousin of sexually assaulting her. We note, however, that the defendant neither offered any evidence with respect to that fact, nor laid the requisite foundation for the admission of evidence to that effect. Accordingly, the prosecutor's mere awareness of that allegation would not preclude his reminding the jury that no evidence had been admitted to suggest that anyone other than the defendant had committed the sexual abuse.

[12] The defendant also argues that it amounted to misconduct for the prosecutor to argue that, if M had accused a family member, namely, Darline's son, Darline simply would not have reported the abuse. The defendant opened the door to this issue by testifying that Darline's son had had intercourse with M when she was four years old. Because "counsel may comment upon facts properly in evidence and reasonable inferences drawn there-

the prosecutor successfully argued to prevent the admission of evidence regarding both Darline's and M's motives to lie. The problem with the defendant's claim is that excluded evidence does not exist at all, for purposes of closing arguments. It cannot be blatantly egregious, therefore, to address such an absence of evidence, notwithstanding the manner by which it was excluded. Further, it is well established that "in addressing the jury [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." (Internal quotation marks omitted.) *State* v. *Richardson*, 214 Conn. 752, 760, 574 A.2d 182 (1990).

Because the challenged conduct occurred solely during the prosecutor's closing argument, by definition it did not evince a pattern of conduct that was repeated throughout the trial. Further, for the reasons that we have discussed, the prosecutor's remarks during closing argument did not rise to the level of blatantly egregious misconduct that would implicate the defendant's constitutional right to due process. Accordingly, we conclude that this unpreserved claim is without merit.

### B

Finally, the defendant argues that the prosecution improperly shifted the burden of proof to him by implying, in closing argument, that the defendant had the burden of proving that the child or her aunt had deliberately fabricated the charges against him. We disagree.

---

from"; *State* v. *Kinsey*, 173 Conn. 344, 348, 377 A.2d 1095 (1977); it did not amount to misconduct for the prosecutor to invite the jury to infer that the abuse would not as likely have been reported if M had accused a family member.

Our review of the record reveals that the state's attorney implied no such thing, and, in fact, underscored the state's burden of proof.[13] Moreover, the trial court instructed the jury regarding the presumption of innocence, the importance of considering all of the evidence in reaching a decision, and, most important, the *state's* burden to prove each and every element of the crime charged beyond a reasonable doubt. Because "we presume, absent a fair indication to the contrary, that the jury followed the instruction of the court as to the law"; *State* v. *Lasky*, 43 Conn. App. 619, 629, 685 A.2d 336 (1996), cert. denied, 239 Conn. 959, 688 A.2d 328 (1997); we conclude that the burden of proof properly remained on the state to prove each and every element of the crimes charged beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] The following is excerpted from the transcript of the prosecution's closing argument: "The Judge will tell you about reasonable doubt. You look at the facts that are proved and you give the defendant the benefit of the doubt. And you say there's—if there are any facts that have been proved, which are consistent with the defendant's innocence, then you must find him not guilty."