STATE OF CONNECTICUT *v.* RICHARD E. PROVOST
(SC 16012)

Borden, Berdon, Katz, Palmer and McDonald, Js.*

Argued June 3—officially released November 30, 1999

* The listing of justices reflects their seniority status on this court as of the date of argument.

*Sheila A. Huddleston,* with whom were *James W. Bergenn* and, on the brief, *Morgan P. Rueckert,* for the appellant (defendant).

*Judith Rossi,* senior assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Kevin Murphy,* assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The defendant, Richard Provost, appealed to the Appellate Court from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes (Rev. to 1989) § 53a-70 (a), as amended by No. 89-359 of the 1989 Public Acts, and risk of injury to a child in violation of General Statutes (Rev. to 1989) § 53-21.[1] The Appellate

---

[1] General Statutes (Rev. to 1989) § 53a-70 (a), as amended by No. 89-359 of the 1989 Public Acts, provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with a person under thirteen years of age."

General Statutes (Rev. to 1989) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned more than ten years or both."

Because the defendant's criminal conduct occurred between April, 1990, and November, 1991, the statutes in effect at that time are those quoted

Court affirmed the judgment of conviction, rejecting the defendant's "claims that the trial court had improperly: (1) precluded the cross-examination of a prosecution witness regarding her credibility in violation of the defendant's fundamental right to confront witnesses pursuant to both the sixth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut; and (2) permitted the prosecution to engage in misconduct during closing argument in violation of the defendant's due process right to a fair trial." *State* v. *Provost*, 49 Conn. App. 56, 57, 713 A.2d 879 (1998). Thereafter, the defendant successfully sought certification to appeal on the following issues: (1) "Did the trial court improperly preclude the cross-examination of a prosecution witness?"; and (2) "Was the state's attorney's closing argument improper and is it reviewable under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989)?" *State* v. *Provost*, 247 Conn. 914, 722 A.2d 808 (1998). We conclude that the Appellate Court properly rejected the defendant's claims. Accordingly, we affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts. "During 1990 through 1991, the victim, M, a minor female, lived with her mother, J.[2] In the winter of 1990, shortly before M's sixth birthday, J began dating the defendant, who was known to M as Rick. J often allowed the defendant to take M with him while he did errands, played racquetball, rode his motorcycle, and, on several occasions, the defendant was alone with M at his residence. J ended her relationship with the defendant in November, 1991.

"In January, 1994, M began exhibiting suicidal tendencies and a violent temper, often running away from

herein. We note that while subsequent amendments, some substantive, have been made to these statutes, they are not relevant to this appeal.

[2] In order to maintain the confidentiality of the victim and her mother, they are referred to herein by their first initials only, while others are identified only by their first names.

home. J took M to the Wheeler Clinic in Plainville for a psychiatric evaluation. During the visit, M became severely agitated, had to be restrained, and was subsequently admitted to Mount Sinai Hospital in Hartford. Upon M's discharge from the hospital three days later, J and her sister, Darline, were informed by the hospital staff that M had a yeast infection and blood in her urine.

"Following her discharge from the hospital, M spent a night at Darline's home. After bathing M, Darline, concerned about M's infection, began to talk with M about 'good touch and bad touch' in an effort to learn whether anyone had touched M inappropriately. M told Darline that 'Rick, mom's boyfriend,' had hurt her inside, kissed her on the mouth, and '[gone] to the bathroom' on her.[3] Darline immediately informed J about M's disclosures, and then reported the allegations to the department of children and families on February 6, 1994.

"After a police investigation, the defendant was arrested and subsequently found guilty of sexual assault in the first degree and risk of injury to a child." *State v. Provost*, supra, 49 Conn. App. 57–58. Additional facts will be set forth as necessary.

I

At trial, the defendant attempted unsuccessfully to question Darline about members of her household. He claims that, by precluding the cross-examination of Darline with respect to her concern about whether any member of her family might have perpetrated the sexual abuse, the trial court violated his right to confront his

---

[3] Neither Darline nor J had had any significant contact with the defendant since J had ended her relationship with him in November, 1991, nearly two and one-half years earlier.

accusers.[4] According to the defendant, Darline had a possible motive to conceal the fact that a member of her family could have been the true assailant. For support, the defendant avers to the following facts: (1) shortly before his trial, M had accused her second cousin Richard of having sexually assaulted her; and (2) a "diary" consisting of notes compiled by Lisa, Darline's sister, indicated Lisa's belief that Darline's husband or son may have been sexually inappropriate with M.

"Our analysis of the defendant's claim begins with the axiom that the defendant is entitled to confront and cross-examine fairly and fully the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Citations omitted; internal quotation marks omitted.) *State* v. *Pratt*, 235 Conn. 595, 603–604, 669 A.2d 562 (1995). "In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues

---

[4] The defendant raises his confrontation claim under the sixth and fourteenth amendments to the United States constitution and under article first, § 8, of the state constitution. Because he provides no argument that his right under the state constitution is distinct from his federal constitutional right, for purposes of this case we treat the rights as coextensive.

actually litigated at trial." (Internal quotation marks omitted.) *State* v. *Santiago*, 224 Conn. 325, 331, 618 A.2d 32 (1992). "Impeachment of a witness for motive, bias and interest may also be accomplished by the introduction of extrinsic evidence. . . . The same rule that applies to the right to cross-examine applies with respect to extrinsic evidence to show motive, bias and interest . . . ." (Citations omitted.) *State* v. *Colton*, 227 Conn. 231, 249, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996). "This right is not absolute . . . but may bow to other legitimate interests in the criminal trial process. . . . Such an interest is the trial court's right, indeed, duty, to exclude irrelevant evidence. . . . The confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . Only relevant evidence may be elicited through cross-examination." (Citations omitted; internal quotation marks omitted.) *State* v. *Pratt*, supra, 235 Conn. 604–605.

"The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." *State* v. *Barnes*, 232 Conn. 740, 746–47, 657 A.2d 611 (1995). Furthermore, "[t]o establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial." (Internal quotation marks omitted.) *State* v. *Castro*, 196 Conn. 421, 426, 493 A.2d 223 (1985). Finally, "[t]he proffering party bears the burden of establishing the relevance of the offered testimony. Unless such a proper foundation is established, the evidence . . . is irrelevant." (Internal quotation marks

omitted.) *State* v. *Barnes*, supra, 747. With these principles in mind, we now turn to the defendant's claims.

During the cross-examination of Darline pertinent to this claim, the following colloquy occurred: "[Defense Counsel]: And you asked her if somebody had sexually molested her?

"[Darline]: I didn't ask her that directly, no.

"[Defense Counsel]: Well, you said you wanted to know whether it was somebody in your family. That's what you told us on direct.

"[Assistant State's Attorney]: I object. That was not—

"[Darline]: That's not exactly—

"The Court: Excuse me. I think, again, the witness can indicate—

"[Assistant State's Attorney]: All right.

"The Court:—if she disagrees. And I think the witness is indicating that you disagree. Is that right, [Darline]?"

"[Darline]: Yes.

"The Court: Okay.

"[Defense Counsel]: So if I wrote down 'if it was somebody in the family' that you testified to, then I'd be wrong.

"[Darline]: I did not testify that it was somebody in the family. I testified that I was afraid who it might be. And if it was somebody in the family, I wanted to know to protect [M].

\* \* \*

"[Defense Counsel]: So when you asked as to whether or not it was somebody in your family or somebody within the family, you did that because you thought it

was relatively recent based upon the yeast infection, did you not?

"[Darline]: I never asked her if it was somebody in the family. I never tried to direct her in one way or the other: friend, relative, whatnot. I asked her who it was that touched her.

"[Defense Counsel]: So, once again, you're telling us that it was not somebody within your family that you were concerned about. And you didn't say that on direct examination.

"[Darline]: That's not what I said. I did not say that to [M]. I never mentioned family members, friends, relatives to [M] when I was talking to her. . . .

"[Defense Counsel]: And would you constantly ask [M] who had given her or how had this yeast infection occurred?

"[Darline]: No, I never asked her about the yeast infection being from somebody giving it to her.

\* \* \*

"[Defense Counsel]: At the time, in 1994, when you were asking [M] what had happened, in the bathtub and shortly thereafter, who were the members of your family who lived under the same roof?"

The state objected to the last question on the grounds of relevance, and the court sustained the objection. Thereafter, the defendant attempted to ask Darline to whom she was married in 1994, when she first spoke with M about the assault, whether she lived alone at that time and whether she had a son. The trial court sustained the state's objections to all three questions on the grounds of relevance.

The following colloquy between the court and defense counsel then transpired: "The Court: But I want to know what your claim is.

"[Defense Counsel]: Oh, my claim simply is [that Darline] was concerned about the members of her family who could have caused this particular yeast infection. She brought it up on direct. That means I certainly can probe her particular concern about her family. And [the defendant] is certainly not her family. . . .

"The Court: Are you claiming anything other than third party culpability, so that I'm clear and the record is clear, counsel?

"[Defense Counsel]: *No, I'm claiming it for credibility with regard to what [Darline] can remember as to what she testified [to] on direct.*" (Emphasis added).

After the trial court sustained the state's objection, it invited the defendant to articulate other reasons he would like the court to consider for questioning Darline about her family life. The defendant never availed himself of this opportunity.

On appeal, the defendant claims that the proposed line of inquiry was intended to expose Darline's alleged bias and motive to lie. The colloquy quoted above, however, belies that portrayal. Despite his current attempts to recharacterize the proffer, the defendant's express declaration of intent was limited to challenging Darline's credibility regarding what she had testified to on direct examination.[5] Therefore, the issue of bias and motive was never identified as a basis for the inquiry.

Additionally, the defendant points to evidence, disclosed to the defendant by the state, that shortly before his trial, M had accused her second cousin Richard

---

[5] Although it was not the issue raised on appeal, the Appellate Court considered whether the defendant had provided the requisite evidentiary foundation that would have allowed the questioning of Darline to evolve into an issue of third party culpability, concluding that the trial court had properly exercised its discretion in precluding the defendant from questioning Darline about other family members. *State* v. *Provost,* supra, 49 Conn. App. 61–62.

of having sexually assaulted her in 1995, and to the existence of a "diary" consisting of notes compiled by Lisa, Darline's sister, which indicated Lisa's belief that Darline's husband or son may have been sexually inappropriate with M, as evidence of Darline's motive to conceal the fact that a member of her family could have been the true assailant. Once again, however, despite his access to the disclosed material and to the information he gathered during his interview of Lisa, the defendant did not proffer or rely on the information to inform the court of the relevancy of his proposed line of inquiry. Indeed, at the time of its ruling, the trial court was aware only of Darline's close relationship to M and of her role in reporting M's allegations to the authorities. This information was not a sufficient basis upon which the trial court should have, sua sponte, speculated that Darline had been motivated improperly.

The defendant characterizes his claim in constitutional terms. Specifically, he claims that the trial court violated his rights secured under the confrontation clause. "The confrontation clause does not, however, suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . Only relevant evidence may be elicited through cross-examination. . . . Thus, [f]rom early times, it has consistently been held that it rests within the judicial discretion of the trial court whether to admit the impeaching statement where no foundation has been laid. . . . The trial court is vested with a liberal discretion as to how the inquiry should be conducted in any given case. . . . Moreover, it is well settled that questions of relevance are committed to the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *State* v. *Gould*, 241 Conn. 1, 16, 695 A.2d 1022 (1997). Regardless of whether there existed a good faith basis for questioning Darline about familial abuse, because the defendant failed to articulate his theory

that Darline had steered M away from implicating a member of Darline's family and coached her to instead incriminate the defendant, and because he failed to identify the material he possessed, either about M's cousin Richard or about Lisa's notes, the court had no basis upon which to speculate about Darline's motive to influence M. We decline to impute to the trial court knowledge it did not have. Accordingly, we conclude that the trial court properly exercised its discretion in precluding the subject area of inquiry.

## II

The defendant next claims that, because the trial court had disallowed the questions about Darline's son and former husband, and because the state knew of the alleged incident involving M's cousin Richard and the contents of Lisa's notes, portions of the state's closing argument—to which the defendant did not object[6]— urging the jury to reject any notion that Darline or J had had any motive to coach M to make a false allegation against the defendant or that they had improperly influenced M, were so egregious as to deprive him of

---

[6] The defendant seeks to prevail on this claim pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any of these conditions, the defendant's claim will fail." (Emphasis in original.) Id., 239–40. Before the Appellate Court, the defendant sought to prevail on this claim under the plain error doctrine pursuant to Practice Book § 60-5. *State* v. *Provost*, supra, 49 Conn. App. 62–63. The Appellate Court determined that the case did not qualify for plain error review. Id., 63 and n.10. The defendant does not renew his claim under that doctrine in this appeal.

due process and a fair trial.[7] We begin our analysis of this issue by setting forth the basic principles of law pertinent to claims of prosecutorial misconduct.

"We have previously acknowledged that prosecutorial misconduct can occur in the course of closing argument." *State* v. *Atkinson*, 235 Conn. 748, 768–69, 670 A.2d 276 (1996). "It is well settled, however, that a defendant may not prevail under *Golding* . . . unless the prosecutorial impropriety was so pervasive or egregious as to constitute an infringement of the defendant's right to a fair trial, nor will we invoke our supervisory authority to reverse an otherwise lawful criminal conviction absent a showing that the conduct of the prosecutor was so offensive to the judicial process that a new trial is necessary to deter such misconduct in the future. . . . Finally, we must review the challenged comments in the context of the entire trial, with due regard to the extent to which the objectionable remarks were invited by defense conduct or argument. *State* v. *Williams*, 231 Conn. 235, 246–47, 645 A.2d 999 (1994); *State* v. *Richardson*, 214 Conn. 752, 759–60, 574 A.2d 182 (1990)." *State* v. *Satchwell*, 244 Conn. 547, 564–65, 710 A.2d 1348 (1998).

Against this legal backdrop, we examine the defendant's claim that the state unfairly argued to the jury that there was no evidence that anyone improperly had motivated M to identify the defendant as her assailant in order to protect a family member from being identified. The defendant argues, in essence, that it was a form of misrepresentation, and therefore improper, for the state to ask the jury to draw an inference from the defendant's failure to introduce evidence that the trial

[7] The defendant cites to his right to due process of law under the fifth and fourteenth amendments to the federal constitution, and article first, § 8, of the Connecticut constitution. Because the defendant does not provide a separate analysis under the state constitution, for purposes of this case we treat the rights as providing coextensive protection.

court had ruled inadmissible.[8] See *State* v. *Ubaldi*, 190 Conn. 559, 567 n.6, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983) (improper to argue that jury should draw negative inference from defendant's failure to call witness that trial court had precluded from testifying); see also *State* v. *McNeely*, 104 Idaho 849, 852, 664 P.2d 277 (1983) (proper to preclude defense counsel from inviting jury to infer that suppressed evidence did not exist); *Commonwealth* v. *Mosby*, 11 Mass. App. 1, 8, 413 N.E.2d 754 (1980) (particularly improper for prosecutor to call jury's attention to absence of evidence when absence results from prosecutor's objection to attempted introduction of evidence by defendant); *People* v. *De Goenaga*, 202 Mich. 503, 506, 168 N.W. 436 (1918) (improper and prejudicial for prosecutor in closing argument to dwell on failure to produce witness whose testimony had been excluded); *State* v. *Taylor*, 929 S.W.2d 925, 928 (Mo. App. 1996) (defendant prejudiced by exclusion of evidence and subsequent ability of state to argue inferences from absence of that evidence); *Commonwealth* v. *Wall*, 413 Pa. Super. 599, 625–27 n.21, 606 A.2d 449 (1992) (to extent prosecutor sought to draw adverse inference from absence of evidence of other sexual assault he had successfully excluded, such argument was reversible error); see also J. Stein, Closing Argument: The Art and the Law (1994) § 16 and cases cited therein. On the basis of the evidence and the defendant's closing argument, we conclude that the state was not prohibited from asking the jury to draw an inference from the lack of evidence regarding any improper motivation behind M's identification of the defendant.

---

[8] We recognize that when evidence is excluded *improperly*, the harm to the defendant is compounded when the state takes advantage of the trial court's exclusion by urging the jury to draw an adverse inference based on the absence of the excluded evidence. *State* v. *Carter*, 228 Conn. 412, 428–29, 636 A.2d 821 (1994). Because we have concluded, however, that there was no evidentiary impropriety in the present case, we are not faced with the "compounding" problem.

The defendant complains that the state improperly urged the jury to draw an inference from the absence of excluded evidence. This was not, however, a case in which the defendant had been precluded from introducing certain evidence the absence of which the state thereafter highlighted for the jury. The defendant attempted to ask Darline if she had a son and the name of the person to whom she had been married. At the time of these questions, however, the jury had already heard, through cross-examination of J, the name of Darline's husband at the time of the alleged assault and that she was divorced at the time of trial. Additionally, the jury knew that Darline had a son who was eleven or twelve at the time of the events in this case. The defendant did not seek to introduce evidence of the alleged 1995 assault of M by her cousin Richard or to question Lisa about her diary. Not only did he fail to rely on that information to inform the court of the relevancy of the aforementioned proposed line of inquiry; see part I of this opinion; but the defendant also failed to proffer such material to demonstrate other suspected abuse. Therefore, this was not an instance of the state attempting to capitalize on its successful efforts to exclude evidence that might have been unfavorable to its case.[9]

[9] Additionally, the state contends that its argument merely responded to the defense theory that M's accusation of the defendant had been suggested to her. Specifically, it argues that the defendant made several attempts to create the impression that M's assailant was someone other than the defendant. In his testimony, the defendant related that J had told him that she believed that Darline's son had had intercourse with M when she was four years old and that J and Darline had done nothing about it. According to the state, this testimony became the basis for the defendant's suggestion that Darline's son might have been responsible for the act in question. The defendant also tried to establish that Pam Neary, M's therapist, subtly had suggested to M that her assailant was an adult rather than a boy closer in age, and that it was Neary who had "suggested that it was [the defendant] and she answered her own questions, rhetorical questions," rather than ask M to identify other people with whom she lived or people who bathed her, etc. Finally, according to the state, in his closing argument, defense counsel intimated that M would do whatever she believed Darline wanted her to do

In light of the foregoing, we cannot agree with the defendant that the state's remarks improperly infringed on his right to a fair trial. Accordingly, we conclude that the Appellate Court, in the absence of a clear constitutional violation that clearly deprived the defendant of a fair trial, properly rejected the defendant's claim of prosecutorial misconduct.[10]

The judgment of the Appellate Court is affirmed.

In this opinion BORDEN and PALMER, Js., concurred.

MCDONALD, J., with whom BERDON, J., joins, dissenting. I would hold that the trial court abused its discretion in denying the defendant the opportunity to cross-examine Darline about her concerns that one or more family members may have sexually abused her then nine year old niece, M. On direct examination, Darline testified that she had suspected that M had been sexually abused and questioned her. Darline testified that, at that time, M accused "Rick," the defendant, of sexual abuse. Darline also testified that when she learned that M had been sexually abused, she wanted to find out the identity of the abuser because "if it was somebody in the family, I wanted to know to protect her."

There was sufficient evidence of familial sexual abuse in the record to allow the defendant to pursue a line of questioning challenging Darline's credibility and to

and that the entire case against the defendant was concocted. Therefore, although he sometimes suggested that the case involved well intentioned adults who jumped to conclusions and inadvertently supplied sexually suggestive details in their efforts to help M, the defendant also intimated that members of M's family had reasons to falsely implicate him and implied that the state's witnesses improperly influenced M to accuse him. Because we have concluded that the state did not improperly take advantage of the trial court's exclusion of evidence, we do not consider whether the defendant invited the subject response.

[10] See footnote 6 of this opinion.

inquire about any influence that family involvement may have had upon Darline's questioning of M. The record reflects that M had accused three family members of sexual assault or sexual advances. The state's attorney disclosed to the defendant during the trial that M recently had accused two cousins of sexual assault. M had accused her adult cousin, who, indeed, shares the same nickname as the defendant, Rick, and her cousin Rick later admitted to abusing M sexually. At one time, M had indicated to the state's attorney that her cousin "Rick" had sexually abused her immediately before telling Darline about the alleged abuse by "Rick," the defendant. M also accused a teenage cousin, Darline's son, of sexually assaulting her. Finally, on the day Darline testified, the state's attorney disclosed evidence[1] that Darline's husband, Romeo, had made sexual advances to M sometime before Darline's questioning of M. The jury, however, never learned of M's allegation concerning Romeo's sexual advances or of any of M's allegations of other familial sexual abuse.

Contrary to the characterizations of the trial court, the defendant was not claiming third party culpability; rather, the defendant argued that, regardless of who abused M, Darline was concerned with protecting her family and may have been motivated to attempt to guide M's identification to avoid an accusation of one or more family members.

I would conclude that the trial court unduly restricted the defendant's cross-examination of Darline. Evidence concerning Darline's knowledge of familial sexual abuse would shed light on the credibility of her testi-

---

[1] This evidence consisted of notes of M's aunt, Lisa. These notes indicated that Darline's ex-husband, Romeo, had made sexual advances to M while he was married to Darline.

mony that she was not covering up for family members when she questioned M.

"[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." (Internal quotation marks omitted.) *State* v. *Sullivan*, 244 Conn. 640, 674 n.11, 712 A.2d 919 (1998) (*Berdon, J.*, dissenting), quoting *Delaware* v. *Van Arsdall*, 475 U.S. 673, 680, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis* v. *Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). "The confrontation clause of the sixth amendment [to the United States constitution] requires that the defendant be accorded some irreducible minimum of cross-examination into matters affecting the reliability and credibility of the state's witnesses." *State* v. *Ortiz*, 198 Conn. 220, 224, 502 A.2d 400 (1985). "Cross-examination concerning motive, interest, bias or prejudice . . . is a matter of right and may not be unduly restricted." (Internal quotation marks omitted.) *State* v. *Lee*, 229 Conn. 60, 70, 640 A.2d 553 (1994). "Partiality, or any acts, relationships or motives reasonably likely to produce it, may be proved to impeach credibility." (Internal quotation marks omitted.) *State* v. *Santiago*, 224 Conn. 325, 332, 618 A.2d 32 (1992).

During closing arguments, the state's attorney repeatedly urged the jury to infer that M's allegations against the defendant were credible because there was no evidence that Darline had a motive to influence M's accusation. The state's attorney repeatedly asked the jury why

Darline would make something up against someone who had not been around her family for over two years. Specifically, the state's attorney stated in reference to Darline: "What kind of bias, interest does she have against this defendant?" The state's attorney also argued to the jury that, if the jury suspected that Darline was "covering for someone, someone in her family or something like that . . . why did we even hear about this at all? . . . You'd never [have] heard about this. Why bring this whole thing under scrutiny? So that's another reason why Darline didn't make this up and feed it to [M]." This argument encouraged the jury to infer that M had never accused a family member of sexual abuse.

The defendant failed to preserve properly his evidentiary claim and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), claiming that he was deprived of a fair trial. The combined effect of the evidentiary ruling and the closing arguments of the state's attorney "so compromised the integrity of the trial as to call into question the reliability of the verdict." *State* v. *Watson*, 251 Conn. 220, 237, 740 A.2d 832 (1999). In my view, the defendant has satisfied *Golding* and I would order a new trial.

Accordingly, I dissent.