STATE OF CONNECTICUT *v.* KENNETH LAMBERT
(AC 18345)

Foti, Landau and Pellegrino, Js.

Argued March 27—officially released June 20, 2000

*Cheryl E. Heffernan,* for the appellant (defendant).

*Margaret Gaffney Radionovas,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Warren Maxwell,* senior assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Kenneth Lambert, appeals from the judgment of conviction, rendered after a jury trial, of criminal attempt to commit murder in violation of General Statutes §§ 53a-54a[1] and 53a-49 (a) (2)[2] and assault in the first degree in violation of General Statutes §§ 53a-59[3] and 53-202k.[4] On appeal, the defendant claims that his constitutional right to confront witnesses under the sixth amendment to the United States constitution, as incorporated into the fourteenth amendment, was abridged when he was not permitted to elicit testimony from the victim concerning names she used as aliases, the illegal purposes for which the

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[3] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person; or . . . (5) with intent to cause physical injury to another person, he causes such injury to such person . . . by means of the discharge of a firearm."

[4] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

aliases were used and her use of a false identification to obtain an illegal job. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At the time of the crimes, the defendant and the victim, a seventeen year old woman, were neighbors in the same apartment building in Hartford. Both were drug users and engaged in the sale of drugs. On June 21, 1996, the victim asked the defendant if he would sell some crack cocaine for her and the defendant agreed. The following day, June 22, 1996, between 11 p.m. and 11:30 p.m., the defendant asked the victim if she would go with him to Windsor while he picked up the money he owed her and more drugs. She consented and they left in a blue Dodge Neon parked beside the apartment building.

After driving for ten to fifteen minutes, the defendant stopped the car in a remote area in north Bloomfield and got out. The defendant walked to the victim's side of the car, opened the door, grabbed her by her arm and pulled her out. He then went back into the car and reached under the front seat. When the defendant got out, the victim noticed that he was holding a gun. The defendant told the victim to run, but before she could move he began firing the gun at her. Two shots struck her in the abdomen. As the victim turned and started to run, the defendant continued shooting at her until she collapsed to the ground. The victim asked the defendant to take her to a hospital, but the defendant refused, and instead kicked her and jumped on her. Sometime before midnight, the defendant departed.

The victim, wounded by five gunshots, remained in the area for the next thirty hours until she was discovered on the morning of June 24, 1996, and taken to a hospital. There, she underwent surgery and recuperated

for two and one-half months. The incident left her with permanent injuries in several parts of her body.

The day after the victim was discovered, the police found the blue Dodge Neon parked in front of the defendant's apartment building. Subsequent testing revealed gunpowder residue on the exterior of the passenger side of the vehicle. The victim later identified the defendant from a photographic array as being her assailant. After the jury returned its verdict, the defendant filed a motion to set aside the verdict, which the court denied. This appeal followed.

The defendant claims that the court deprived him of his constitutional right to confront and cross-examine the victim about names she used as aliases, the illegal purposes for which she used the aliases and her use of a false identification to obtain an illegal job. We disagree.

The following additional facts are necessary for the resolution of this appeal. Before trial, the state filed a motion in limine to preclude the defendant from introducing evidence regarding the victim's work as a prostitute in a massage parlor and her sale of drugs as a gang member. The state argued that such evidence would not impeach the victim's credibility and that its only significance would be to attack her character, which had not been placed in issue. The court decided to defer its ruling until after the witness had testified on direct examination.

At trial, the victim was the state's principal witness, and the defendant challenged her credibility. Prior to cross-examination and outside the presence of the jury, the victim proffered to the court that she had used the names "Squirrel" and "Baby Thug" while selling drugs on the street as a gang member, and was known as "Danielle" while working as a prostitute in a massage parlor. Thereafter, the court granted the state's motion in limine and ruled that the victim's work as a prostitute

could not be admitted into evidence because it did not reflect on her credibility. The court also ruled that revealing the names of the victim's aliases "might become, at some point, admissible but at this point the court does not believe that it has probative value that would outweigh the prejudice to the state and . . . in looking specifically at gang membership . . . I don't see [the] link [with the crime], nor do I believe that the probative value of going into the other names, Danielle and Baby Thug, have any relevance to credibility at this point. This may change, but it hasn't reached that point yet . . . ." The defense was permitted, however, to ask the victim if she had used aliases in the past and if she had used a fake identification to obtain a job. The defense also was permitted to question the victim about the assumed name, "Marianne Morrison," which she used when she was admitted to a hospital for treatment of her injuries and about some of her past drug dealing activities. The defense subsequently decided to question the victim about her use of aliases and her drug dealing activities, but not about whether she had used the fake identification to obtain a job.

"The standard to be used to review a trial court's decision on the relevance and admissibility of evidence is abuse of discretion." (Internal quotation marks omitted.) *State* v. *Markeveys*, 56 Conn. App. 716, 718, 745 A.2d 212, cert. denied, 252 Conn. 953, 749 A.2d 1203 (2000). It is a well established principle of law that the trial court has wide discretion to determine the relevance of evidence and the scope of cross-examination, and that the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. See *State* v. *Mann*, 56 Conn. App. 856, 857, 747 A.2d 19, cert. denied, 253 Conn. 906, 753 A.2d 941 (2000); see *Baughman* v. *Collins*, 56 Conn. App. 34, 35, 740 A.2d 491 (1999), cert. denied, 252 Conn. 923, 747 A.2d 517 (2000). "Every reasonable presumption should

be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . Furthermore, [t]o establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial. . . . Finally, [t]he proffering party bears the burden of establishing the relevance of the offered testimony. Unless such a proper foundation is established, the evidence . . . is irrelevant." (Citations omitted; internal quotation marks omitted.) *State* v. *Provost*, 251 Conn. 252, 257, 741 A.2d 295 (1999).

"Our analysis of the defendant's claim begins with the axiom that the defendant is entitled to confront and cross-examine fairly and fully the witnesses against him. . . . In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . . In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry [and] whether the field of inquiry was adequately covered by other questions that were allowed . . . . This right is not absolute . . . but may bow to other legitimate interests in the criminal trial process. . . . Such an interest is the trial court's right, indeed, duty, to exclude irrelevant evidence. . . . The confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination." (Citations omitted; internal quotation marks omitted.) Id., 256–57.

The defendant claims that the assumed name used by the victim was a proper subject of cross-examination for the purpose of assessing her credibility, citing as authority *State* v. *Dolphin*, 195 Conn. 444, 458–59, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88

L. Ed. 2d 84 (1985), and *State* v. *Huckabee*, 41 Conn. App. 565, 573, 677 A.2d 452, cert. denied, 239 Conn. 903, 682 A.2d 1009 (1996). We find, to the contrary, that neither of these cases supports the defendant's claim.

In *Dolphin*, our Supreme Court held that cross-examination of a witness about his use of an alias is relevant to the issue of veracity, but the court did not address the narrower question, raised here, of whether testimony as to the specific name used also is relevant. See *State* v. *Dolphin*, supra, 195 Conn. 458–59. Similarly, in *Huckabee*, the issue before the court was not whether the defendant's street name, "Snake," was relevant to the issue of veracity, but whether the name, and how the police officer investigating the crime came to know about the name, constituted evidence of the defendant's prior misconduct. *State* v. *Huckabee*, supra, 41 Conn. App. 573.

In the present case, our review of the record and briefs discloses that during the trial, the defense asked the victim if she had used aliases in the past, to which she responded, "Yes," and about the assumed name, "Marianne Morrison," which she used when she was admitted to a hospital for treatment of her injuries.[5] Having permitted the jury to hear this testimony, the court's conclusions that the victim's other aliases were not relevant in assessing her credibility and that excluding such evidence would not prejudice the defendant were reasonable. See *State* v. *Provost*, supra, 251 Conn. 257. Revealing that the victim had used the assumed names of "Squirrel," "Baby Thug" and "Danielle" might have raised questions regarding her character and distracted the jury from considering the issue of her truthfulness. Furthermore, in upholding the trial court's ruling in *Dolphin*, our Supreme Court reiterated the

---

[5] The court permitted testimony about the alias used at the hospital because the police had suggested using the alias for purposes of protection.

well established principle that a "trial court enjoys a liberal discretion in fixing the limits of cross-examination, particularly as it affects credibility." *State* v. *Dolphin*, supra, 195 Conn. 459. Accordingly, we conclude that the court did not abuse its discretion in excluding testimony as to three of the four names that the victim used as aliases.

The defendant next claims that the court improperly precluded him from·eliciting testimony about the context in which the aliases were used. He relies on *Vogel* v. *Sylvester*, 148 Conn. 666, 677, 174 A.2d 122 (1961), in contending that when aliases are used in connection with illegal activities such as drug dealing and prostitution, "a new and additional element is injected," which may affect the relevance of such activities to the issue of veracity.

"A witness may be impeached by evidence of specific acts of misconduct that relate to veracity, but not by those that merely illustrate general bad behavior." *State* v. *Lewis*, 26 Conn. App. 574, 579, 602 A.2d 618, cert. denied, 221 Conn. 923, 608 A.2d 688 (1992). Furthermore, "[o]ur Supreme Court has specifically recognized that a witness' sexual conduct does not reflect upon his or her credibility." *State* v. *McIntosh*, 12 Conn. App. 179, 184, 530 A.2d 191, cert. denied, 205 Conn. 808, 532 A.2d 77 (1987). "It is also generally held that a witness' reputation for being . . . a prostitute [is] not, in and of [itself], relevant to her credibility or veracity as a witness." *Demers* v. *State*, 209 Conn. 143, 156–57, 547 A.2d 28 (1988).

The defendant's reliance on *Vogel* is misplaced. In that case, the trial court permitted testimony as to the defendant's extramarital affair for the purpose of impeaching his credibility. *Vogel* v. *Sylvester*, supra, 148 Conn. 675. On appeal, our Supreme Court stated that although only a few types of sexual misconduct are

indicative of a lack of veracity, "where the witness was married at the time of the act . . . a new and additional element is injected which may affect the question of relevancy to the issue of veracity. . . . It cannot be said that [the defendant's] course of conduct in entering into an extramarital sexual relationship . . . had no logical tendency to indicate a lack of veracity on his part." Id., 677. By contrast, we have expressly upheld a trial court's ruling that evidence of drug dealing is not relevant to veracity; *State* v. *Carter*, 34 Conn. App. 58, 69, 640 A.2d 610 (1994), rev'd on other grounds, 232 Conn. 537, 656 A.2d 657 (1995); and our Supreme Court has held that prostitution may be relevant to veracity only if it is related to a substantive or material issue in the case. *Demers* v. *State*, supra, 209 Conn. 157. Here, however, the victim's work as a prostitute in a massage parlor was not related to the defendant's criminal acts or to any substantive or material issue in the case. Moreover, the defendant cites no authority, and we have found none, for the proposition that the use of an alias while engaging in prostitution or drug dealing enhances the deception associated with the alias or makes such activities more relevant to the question of veracity. Accordingly, we conclude that it was not an abuse of discretion for the court to preclude the defendant from introducing testimony as to the victim's prior activities as a prostitute and a gang member.

The defendant also claims that the court improperly excluded evidence that the victim used a false identification to obtain her illegal job at the massage parlor. Under the principles previously articulated, we conclude that the court did not abuse its discretion in determining that testimony regarding her illegal job was inadmissible for purposes of impeaching her credibility. See *State* v. *McIntosh*, supra, 12 Conn. App. 179; see also *Demers* v. *State*, supra, 209 Conn. 157; *State* v. *Lewis*, supra, 26 Conn. App. 579.

The defendant finally contends that the court's preclusion of cross-examination about the victim's prior misconduct constitutes prejudicial error. He relies for authority on *United States* v. *Leake*, 642 F.2d 715, 719 (4th Cir. 1981), and *State* v. *Ouellette*, 190 Conn. 84, 103, 459 A.2d 1005 (1983). We do not agree and find both cases inapposite.

In *Leake*, the United States Court of Appeals for the Fourth Circuit found that the trial court had abused its discretion in prohibiting the defense from attacking the credibility of the primary prosecution witness by eliciting testimony as to her prior fraudulent activities. *United States* v. *Leake*, supra, 642 F.2d 719. Here, however, where the defendant has not made allegations that the victim's activities were fraudulent, *Leake* does not apply. The defendant also improperly relies on *Ouellette*. In that case, the trial court precluded the defense from questioning a sexual assault victim regarding her past failure to file complaints of similar sexual misconduct against others. *State* v. *Ouellette*, supra, 190 Conn. 103. Our Supreme Court concluded that "[t]he prevention, throughout the trial of a criminal case, of all inquiry in fields where cross-examination is appropriate, and particularly in circumstances where the excluded questions have a bearing on credibility and on the commission by the accused of the acts relied upon for conviction, passes the proper limits of discretion and is prejudicial error." (Internal quotation marks omitted.) Id. Here, by contrast, the defendant does not allege that the victim's prior misconduct had any bearing whatsoever on the crime for which he was convicted.

Moreover, the court permitted the defendant to elicit testimony that the victim had sold crack on the street, had been involved in selling drugs for several years, had a boyfriend who was in jail for selling drugs, that on one occasion the victim and the defendant arranged for the defendant to sell drugs for the victim, and that

on the night of the shooting she and the defendant were doing a drug-related errand. The victim also testified that she had used a New Jersey identification even though she had never lived in New Jersey. The defendant could have elicited additional testimony that the victim had used a false identification to obtain a job, but chose not to do so. The only information relating to the victim's prior misconduct not brought to the jury's attention was that she previously had sold drugs while a member of a gang and had worked as a prostitute in a massage parlor.

Accordingly, we conclude that the court's ruling did not unduly restrict the scope of the cross-examination and that it was not an abuse of the court's discretion to preclude the defense from eliciting testimony as to three of the names the victim used as aliases, her prior misconduct as a prostitute and gang member and her use of the fake identification to obtain an illegal job. See *State* v. *Provost,* supra, 251 Conn. 256–57.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] We also conclude that because the issue of the victim's veracity was adequately covered by other questions that were allowed, the restrictions placed on her testimony were not clearly prejudicial to the defendant. See *State* v. *Provost,* supra, 251 Conn. 256–57.